PETER B. MORRISON (SBN 230148)
peter.morrison@skadden.com
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
300 South Grand Avenue, Suite 3400
Los Angeles, California 90071-3144
Telephone: (213) 687-5000
Facsimile: (213) 687-5600

ALEXANDER C. DRYLEWSKI (*admitted pro hac vice*)
alexander.drylewski@skadden.com
MICHAEL W. RESTEY JR. (*admitted pro hac vice*)
michael.restey@skadden.com
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
One Manhattan West
New York, New York 10001
Telephone: (212) 735-3000
Facsimile: (212) 735-2000

*Attorneys for Defendants*
MAKER ECOSYSTEM GROWTH
HOLDINGS, INC. AND MAKER
ECOSYSTEM GROWTH FOUNDATION

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| PETER JOHNSON, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>MAKER ECOSYSTEM GROWTH HOLDINGS, INC., a foreign corporation; MAKER ECOSYSTEM GROWTH FOUNDATION, a foreign corporation; and DAI FOUNDATION, a foreign corporation,<br><br>Defendants. | Case No.: 3:20-cv-02569-MMC<br><br>**(1) THE MAKER DEFENDANTS' REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF THEIR MOTION TO COMPEL ARBITRATION; and**<br><br>**SEPARATE COVER:**<br><br>**(2) REPLY DECLARATION OF STEVEN BECKER IN FURTHER SUPPORT OF THE MAKER DEFENDANTS' MOTION.**<br><br>Date: October 2, 2020<br>Time: 9:00 a.m.<br>Courtroom: 7<br>Judge: Hon. Maxine M. Chesney |

**TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ........................................................................................................ 1

ARGUMENT .................................................................................................................................... 4

    I.    Plaintiff Concedes That There is A Valid and Enforceable Agreement to Arbitrate ............................................................................................................................ 4

        A.    Plaintiff Admits That He Affirmatively Agreed to the 2018 Terms of Service ................................................................................................................ 4

        B.    Plaintiff Concedes That Defendants Can Enforce the 2018 Terms of Service ................................................................................................................ 5

        C.    Plaintiff's Sole Argument Concerns Whether The Claims Fall Within The Scope of the 2018 Terms of Service Arbitration Provision, Not Whether That Agreement Was Validly Formed ............................................ 5

    II.    The Arbitrator Should Decide All Questions Regarding the Scope of Arbitrability .................................................................................................................... 7

    III.    Even if This Court Were To Decide Arbitrability, It Should Reject Plaintiff's Argument ......................................................................................................................... 9

CONCLUSION .............................................................................................................................. 13

# TABLE OF AUTHORITIES

Page

## CASES

*Bankston v. Americredit Financial Services, Inc.*,
 No. C 09-04892 SBA,
 2011 WL 89730 (N.D. Cal. Jan. 10, 2011) ................................................................12

*Brennan v. Opus Bank*,
 796 F.3d 1125 (9th Cir. 2015) ................................................................................2, 8

*Caviani v. Mentor Graphics Corp.*,
 No. 19-cv-01645-EMC,
 2019 WL 4470820 (N.D. Cal. Sept. 18, 2019) .....................................................2, 3, 9

*Cooper v. Adobe Systems Inc.*,
 No. 18-CV-06742-BLF,
 2019 WL 5102609 (N.D. Cal. Oct. 11, 2019) .......................................................2, 6, 7

*Cortez v. Nationstar Mortgage LLC*,
 No. 8:19-cv-02045-JLS-ADS,
 2020 WL 2303090 (C.D. Cal. Mar. 2, 2020) ..........................................................2, 5

*Crooks v. Wells Fargo Bank, N.A.*,
 312 F. Supp. 3d 932 (S.D. Cal. 2018),
 *appeal dismissed*, No. 18-55885, 2018 WL 8731566 (9th Cir. Oct. 9, 2018) .....................6

*Crypto Asset Fund LLC et al. v. Opskins Group Inc. et al.*,
 No. 19-CV-06983 (CJC) (JCx) (C.D. Cal. Aug. 13, 2020) ................................1, 4, 7, 12

*Daniels v. Painter*,
 No. CV 16-03782-RSWL-Ex,
 2016 WL 11498957 (C.D. Cal. Sept. 16, 2016) ..............................................................4

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
 139 S. Ct. 524 (2019) ..................................................................................................7

*In re Holl*,
 925 F.3d 1076 (9th Cir. 2019) ......................................................................................1

*I-Enterprise Co. v. Draper Fisher Jurvetson Management Co. V*,
 No. C-03-1561MMC,
 2005 WL 1661959 (N.D. Cal. July 15, 2005) ................................................................5

*Key v. Optum Services, Inc.*,
 No. SACV 19-00813 AG (JDEx),
 2019 WL 6736924 (C.D. Cal. July 29, 2019) ................................................................8

ii

DEFENDANTS' REPLY ISO MOTION TO COMPEL ARBITRATION    Case No. 3:20-cv-02569-MMC

*Kin Wah Kung v. Experian Information Soutions, Inc.*,
    No. C 18-00452 WHA,
    2018 WL 2021495 (N.D. Cal. May 1, 2018) ..................................................................9

*Larson v. Speetjens*,
    No. C 05-3176 SBA, 2006 WL 2567873 (N.D. Cal. Sept. 5, 2006), *order clarified*,
    No. C 05-3176 SBA, 2006 WL 3365589 (N.D. Cal. Nov. 17, 2006) ..................................4

*McLellan v. Fitbit, Inc.*,
    No. 3:16-cv-00036-JD,
    2017 WL 4551484 (N.D. Cal. Oct. 11, 2017) ................................................................7

*Miller v. Time Warner Cable Inc.*,
    No. 8:16-cv-00329-CAS (ASx),
    2016 WL 7471302 (C.D. Cal. Dec. 27, 2016) ............................................................3, 8

*Morgan v. Countrywide Home Loans, Inc.*,
    No. C 06-04766 SI,
    2007 WL 80726 (N.D. Cal. Jan. 8, 2007) ....................................................................12

*Muschetto v. Kenosian & Miele, LLP*,
    No. SACV 17-1020 JVS(DFMx),
    2017 WL 10562628 (C.D. Cal. Oct. 23, 2017) .............................................................6

*PNR Marketing Solutions LLC v. Fun Flicks of Southern California*,
    No. SACV 18-01600 AG (KESx),
    2019 WL 3220020
    (C.D. Cal. April 22, 2019) ......................................................................................9, 11

*Ramirez v. Cintas Corp.*,
    No. C 04-00281 JSW,
    2005 WL 658984 (N.D. Cal. Mar. 22, 2005) .............................................................9, 11

*Rent-A-Center, West, Inc. v. Jackson*,
    561 U.S. 63 (2010) .......................................................................................................6

*Verge Media Cos. v. Maccini*,
    No. CV 11–05520–MMM (JCx), 2011 WL 13220726 (C.D. Cal Oct. 17, 2011) ...........12

*West v. Uber Technologies*,
    No. 18-CV-3001-PSG-GJS,
    2018 WL 5848903 (C.D. Cal. Sept. 5, 2018) ...............................................................5

*Worldwide Media, Inc. v. Twitter, Inc.*,
    No. 17-cv-07335-VKD,
    2018 WL 5304852 (N.D. Cal. Oct. 24, 2018) ..............................................................11

**STATUTES**

Cal. Civ. Code § 1714(a) ...........................................................................................................11

**RULES**

Fed. R. Evid. 201(b)..................................................................................................................9

**PRELIMINARY STATEMENT**

Plaintiff's opposition brief ("Opposition" or "Opp.")[1] confirms that the Court should compel arbitration of his claims. Plaintiff has conceded, either expressly or through silence, that: (1) he opened his account on the MakerDAO system in November 2018; (2) at that time, he affirmatively assented to the 2018 Terms of Service and arbitration provision contained therein, which is the agreement the Maker Defendants seek to enforce through this Motion; and (3) the Maker Defendants are entitled to enforce that agreement under principles of equitable estoppel. Despite these critical admissions, Plaintiff now seeks to avoid arbitration by advancing a new theory of his case that appears nowhere in his multiple pleadings and, in fact, is directly contradicted by them. As detailed below, the Court should reject Plaintiff's attempt to, in his own words, "have [his] cake and eat it too" (*see* Opp. at 20) by now disavowing the very factual allegations that form the basis of his claims against the Maker Defendants. *See Crypto Asset Fund LLC et al. v. OPSkins Grp. Inc. et al.*, No. 19-CV-06983 (CJC) (JCx) (C.D. Cal. Aug. 13, 2020) (rejecting plaintiff's attempt to use "as a sword in their Complaint [] the same agreement they attempt to use [as] a shield against arbitration").

**Plaintiff assented to the 2018 Terms of Service (*infra* Section I.A).** First, Plaintiff does not contest that when he created his MakerDAO account in November 2018, he affirmatively assented to the 2018 Terms of Service containing the arbitration provision that the Maker Defendants seek to enforce here. Plaintiff thus concedes that a valid agreement to arbitrate was formed. *See, e.g.*, *In re Holl*, 925 F.3d 1076, 1084 (9th Cir. 2019).

Plaintiff's only response is that, because the MakerDAO system was upgraded in 2019, roughly a year after Plaintiff opened his MakerDAO account, the 2018 Terms of Service do not apply to his claims, and only the terms of service from 2019 could apply. But this argument speaks to whether his claims fall within the *scope* of the arbitration provision in the 2018 Terms of Service (*i.e.*, the agreement that the Maker Defendants seek to enforce here), *not* whether the arbitration provision was validly formed. *See Cooper v. Adobe Sys. Inc.*, No. 18-CV-06742-BLF, 2019 WL

---

[1] Unless otherwise indicated, all capitalized terms have the same meanings ascribed to them in the Maker Defendants' opening brief in support of their Motion to Compel Arbitration (the "Motion") (ECF No. 41 ("Maker Def. Br.")).

5102609, at *5 (N.D. Cal. Oct. 11, 2019) (plaintiff's argument that he did not form an agreement to arbitrate with respect to a particular program under general terms of service was a question regarding the scope of the arbitration provision, not whether an arbitration agreement had been formed).

**Plaintiff concedes that the Maker Defendants can enforce the 2018 Terms of Service (*infra* Section I.B).** Second, Plaintiff also fails to address, and thus concedes, that the Maker Defendants can enforce the arbitration provision in the 2018 Terms of Service. *See Cortez v. Nationstar Mortg. LLC*, No. 8:19-cv-02045-JLS-ADS, 2020 WL 2303090, at *8 (C.D. Cal. Mar. 2, 2020) (failure to address an aspect of a motion to compel arbitration in opposition may be deemed a concession). This is with good reason – case law makes clear that the Maker Defendants may enforce the contract under the well-established doctrine of equitable estoppel. (*See* Maker Def. Br. at 13-18.)

**Arbitrability has been delegated to the arbitrator (*infra* Section II).** Third, because there is no dispute that a valid agreement to arbitrate was formed, Plaintiff's arguments regarding whether his claims fall within the scope of that agreement must be decided by the arbitrator in the first instance, rather than this Court. (*See id.* at 12-13); *see also Caviani v. Mentor Graphics Corp.*, No. 19-cv-01645-EMC, 2019 WL 4470820, at *4-5 (N.D. Cal. Sept. 18, 2019). Indeed, the 2018 Terms of Service expressly incorporate by reference the AAA commercial arbitration rules, which state unambiguously that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim." (Maker Def. Br. at 7, 13.) Numerous courts within the Ninth Circuit have held that incorporating these rules delegates issues of arbitrability to the arbitrator. *See, e.g.*, *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015); *Caviani*, 2019 WL 4470820, at *4.

Plaintiff suggests in a footnote that this clear delegation may only be enforced against sophisticated parties. (*See* Opp. at 19 n.45.) But Plaintiff offers no evidence whatsoever that he is unsophisticated. While he claims offhand and without evidence that he is unsophisticated "vis-à-vis the Maker Defendants" (*id.*), courts within the Ninth Circuit do not compare the relative sophistication of the parties but instead solely evaluate the sophistication of the party to be bound.

*See, e.g.*, *Caviani*, 2019 WL 4470820, at *5. Here, by affirmatively agreeing to the 2018 Terms of Service, Plaintiff represented in no uncertain terms that "[a]ny use or interaction with the Dai System and Software requires a comprehensive understanding of applied cryptography and computer science in order to appreciate inherent risks, including those listed above. You represent and warrant that you possess relevant knowledge and skills." (Declaration of Steven Becker in Support of the Maker Defendants' Motion to Compel Arbitration, ECF No. 41-01 (the "Becker Decl."), Ex. A at 12.) Plaintiff's own statements in the Amended Complaint and his declaration further underscore that he is highly sophisticated, both with respect to cryptocurrency generally and the MakerDAO system in particular. (*See, e.g.*, First Amended Class Action Complaint, ECF No. 9 ("Amend. Compl.") ¶ 4; Declaration of Peter Johnson in Support of Plaintiff's Opposition to the Maker Defendants' Motion to Compel Arbitration, ECF No. 43-1 (the "Johnson Decl.") ¶ 8.) Regardless, courts have enforced similar delegation provisions even where the party seeking to avoid arbitration put forth evidence that it was unsophisticated (which Plaintiff fails to do here). *See, e.g.*, *Miller v. Time Warner Cable Inc.*, No. 8:16-cv-00329-CAS (ASx), 2016 WL 7471302, at *5 (C.D. Cal. Dec. 27, 2016). Accordingly, the Court should hold Plaintiff to his agreement and find that an arbitrator, rather than the Court, must decide any arguments regarding the scope of the arbitration provision.

**Even if This Court Were to Decide the Question of Arbitrability, It Should Reject Plaintiff's Argument Based on His Own Pleadings (*infra* Section III).** Finally, regardless of whether the arbitrator or this Court decides arbitrability, Plaintiff's argument lacks all merit. While Plaintiff now attempts to focus exclusively on the upgraded version of the MakerDAO system from 2019, this simply cannot be squared with his own allegations in the Complaint and Amended Complaint, which: (i) identify Plaintiff as a user of the MakerDAO system beginning in ***November 2018*** without reference to any upgrade in 2019 (*see* Amend. Compl. ¶ 4); (ii) allege that Plaintiff was induced to become a user based on purported misstatements and omissions the Maker Defendants allegedly made stretching back to ***2017***, a year before he opened his account and two years before the 2019 upgrade on which he now focuses (*see id.* ¶¶ 37, 45, 52, 77); (iii) make no distinction whatsoever between different versions of the system, and in fact does not mention the different versions at all; and (iv) support his claims with statements made before any upgrade to the system

3

ever occurred (*id.* ¶¶ 37, 45, 52). The Amended Complaint also relies on alleged misstatements and omissions that necessarily implicate the 2018 Terms of Service, including statements regarding the risks relating to Plaintiff's use of the system at the time he opened his account. (Maker Def. Br. at 14-15.) Plaintiff cannot have it both ways by arguing that those allegations should be credited, while at the same time now asserting that his case relates solely to a different set of facts. *See Crypto Asset Fund LLC et al. v. OPSkins Grp. Inc. et al.*, No. 19-CV-06983 (CJC) (JCx) (C.D. Cal. Aug. 13, 2020) (plaintiff cannot use complaint "as a sword" against defendants while at the same time claiming it is a "shield" against arbitration); *Daniels v. Painter*, No. CV 16-03782-RSWL-Ex, 2016 WL 11498957, at *7 (C.D. Cal. Sept. 16, 2016) ("[Courts] can look to the complaint for duties the [d]efendant has [allegedly] breached to determine the interconnectedness of the claims and the underlying contract."); *Larson v. Speetjens*, No. C05-3176 SBA, 2006 WL 2567873, at *7 (N.D. Cal. Sept. 5, 2006), *order clarified*, No. C05-3176 SBA, 2006 WL 3365589 (N.D. Cal. Nov. 17, 2006) ("No person can be permitted to adopt that part of an entire transaction which is beneficial to him/her, and then reject its burdens."). The Court should reject Plaintiff's effort to rewrite his Amended Complaint through his Opposition in order to escape the contractual commitment to arbitrate that he undeniably made.

## ARGUMENT

### I. **Plaintiff Concedes That There Is a Valid and Enforceable Agreement to Arbitrate**

#### A. **Plaintiff Admits That He Affirmatively Agreed to the 2018 Terms of Service**

Plaintiff concedes the first, and most important, question facing this Court: whether he agreed to the 2018 Terms of Service containing the arbitration provision that the Maker Defendants seek to enforce. Plaintiff repeatedly admits that he was required to review and accept the 2018 Terms of Service – including the arbitration provision contained therein – when he created his account on the MakerDAO system in November 2018. (*See* Opp. at 6 ("Mr. Johnson was required to review and acknowledge reviewing the 'Terms of Service' that contained, among other things, an arbitration clause."); *see also id.* at 3 ("[T]he Maker Defendants ask the Court to enforce a set of Terms of Service that Mr. Johnson reviewed and agreed to *in 2018*.") (emphasis in original); *id.* at 4 ("Mr. Johnson does not dispute that when he signed up for the Sai System in 2018, he acknowledged

4

reviewing the Terms of Service.").) Nor does he raise any challenge to the arbitration provision contained within the 2018 Terms of Service. Instead, Plaintiff argues that the terms of service introduced in 2019 are an unenforceable browsewrap agreement. (*See id.* at 18-19.) But this argument misses the mark entirely because the Maker Defendants are only seeking to enforce the 2018 Terms of Service, which Plaintiff admits that he was required to review and accept. (*See* Maker Def. Br. at 9-12.) Accordingly, Plaintiff has admitted that he assented to and was bound by the very arbitration provision that the Maker Defendants now seek to enforce through this Motion.

### B. Plaintiff Concedes That Defendants Can Enforce the 2018 Terms of Service

The Maker Defendants can enforce the arbitration provision in the 2018 Terms of Service based on the well-established principle of equitable estoppel because (i) Plaintiff's claims necessarily rely upon and are interwoven with the 2018 Terms of Service and (ii) of the close relationship between the signatory SLS and the Maker Defendants. (*See* Maker Def. Br. at 14-18.) Plaintiff does not respond to this argument in his Opposition and thus concedes the point. (*Id.* at 13-18); *see Cortez*, 2020 WL 2303090, at *8 (failure to address an aspect of a motion to compel arbitration in opposition may be deemed a concession); *West v. Uber Techs.*, No. 18-CV-3001-PSG-GJS, 2018 WL 5848903, at *5 (C.D. Cal. Sept. 5, 2018) ("Arguments to which no response is supplied are deemed conceded."); *see also I Enter. Co. v. Draper Fisher Jurvetson Mgmt. Co. V*, No. C-03-1561-MMC, 2005 WL 1661959, at *14 (N.D. Cal. July 15, 2005) (Chesney, J.) (plaintiff abandoned certain claims by failing to address them in opposition to defendant's motion to dismiss).

Accordingly, there is no dispute that (1) Plaintiff assented to the 2018 Terms of Service (and arbitration provision contained therein); (2) the 2018 Terms of Service constitute a valid agreement; and (3) the Maker Defendants can enforce that agreement. As a result of these concessions, the Maker Defendants' motion to compel arbitration should be granted.

### C. Plaintiff's Sole Argument Concerns Whether the Claims Fall Within the Scope of the 2018 Terms of Service Arbitration Provision, Not Whether That Agreement Was Validly Formed

Rather than argue that he did not assent to the 2018 Terms of Service (because he cannot), Plaintiff argues that his "agreement is not relevant here because the parties are litigating Mr. Johnson's experience on the new Dai System, not the old Sai System." (Opp. at 4.) In so doing,

Plaintiff essentially argues that, although he formed an agreement to arbitrate in 2018, the scope of that agreement does not cover his use on the system after it was upgraded in 2019. Critically, however, this argument is not one of contract formation; rather, it is a question of arbitrability – *i.e.*, whether Plaintiff's claims fall within the scope of the parties' agreement to arbitrate in the 2018 Terms of Service. *See Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 68-69 (2010) ("We have recognized that parties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or *whether their agreement covers a particular controversy*.").

To the extent Plaintiff implies that his agreement to arbitrate terminated upon the upgrade in 2019, this argument fails. The 2018 Terms of Service provide that the arbitration and class action waiver provisions, among others, survive "any termination of these [2018 Terms of Service]." (Becker Decl., Ex. A at 14.) Courts within the Ninth Circuit routinely compel arbitration pursuant to arbitration clauses that survive the termination of the overarching agreement. *See, e.g.*, *Crooks v. Wells Fargo Bank, N.A.*, 312 F. Supp. 3d 932, 938 (S.D. Cal. 2018), *appeal dismissed*, No. 18-55885, 2018 WL 8731566 (9th Cir. Oct. 9, 2018); *Muschetto v. Kenosian & Miele, LLP*, No. SACV 17-1020 JVS(DFMx), 2017 WL 10562628, at *4 (C.D. Cal. Oct. 23, 2017).

The decision in *Cooper v. Adobe Systems Inc.* is instructive. 2019 WL 5102609, at *5. There, the defendant presented evidence that when the plaintiff downloaded and used a program called Lightroom, he affirmatively assented to Adobe's General Terms of Use containing an arbitration provision. *Id*. at *3. Plaintiff did not contest this point, but instead argued that he did not agree to the General Terms of Use with respect to his later use of a separate program called Adobe Premiere Pro and, as a result, the parties did not form an agreement to arbitrate his claims with respect to that program. *Id*. The court explained that plaintiff's "argument misses the mark because disputing the scope of an agreement is not the same as disputing the formation of one. [Plaintiff] does not dispute that he agreed to Adobe's General Terms of Use. Whether or not [plaintiff's] use of [Adobe Premiere Pro] is covered by Adobe's General Terms of Use . . . is a dispute over the scope of the agreement." *Id*. at *5. Because the Adobe General Terms of Use incorporated the JAMS Comprehensive Arbitration Rules & Procedures, that court held that plaintiff's challenge to arbitrability (despite being couched in terms of contract formation) was for the arbitrator to decide. *Id*. at *6.

| | |
|---|---|
| 1 | Like the plaintiff in *Adobe*, Plaintiff concedes that he assented to the 2018 Terms of Service |
| 2 | when he created his account in November 2018, thus indisputably forming a valid agreement to |
| 3 | arbitrate. (*See* Opp. at 3, 4, 6.) Nonetheless, Plaintiff argues that he did not agree to the 2018 Terms |
| 4 | of Service (or any new terms of service) in connection with the upgrade of his account in 2019, and |
| 5 | it is only the 2019 terms of service that are applicable. (*See id.* at 14-17.) As in *Adobe*, this is really |
| 6 | an assertion that Plaintiff's claims do not fall within the *scope* of the arbitration provision in the 2018 |
| 7 | Terms of Service. Moreover, just as in *Adobe*, the 2018 Terms of Service delegate questions |
| 8 | concerning arbitrability to the arbitrator, and this Court should not resolve this issue. (*Infra* Section |
| 9 | II; *see also* Maker Def. Br. at 12-13.) Accordingly, as discussed below, Plaintiff's question regarding |
| 10 | the scope of the arbitration provision should be decided in arbitration, where Plaintiff is free to press |
| 11 | his argument that the 2018 Terms of Service do not cover his claims. |

## II. The Arbitrator Should Decide All Questions Regarding the Scope of Arbitrability

Because the 2018 Terms of Service expressly incorporate the AAA arbitration rules (which, in turn, provide that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement"), the question of whether Plaintiff's claims fall within the scope of the arbitration provision has been delegated to the arbitrator. (Maker Def. Br. at 12-13.) "[A]greements to allow the arbitrator to decide issues of arbitrability are so sacred that courts may not override them and decide these issues even if the court thinks the application of the arbitration agreement is wholly groundless." *See Crypto Asset Fund LLC et al. v. OPSkins Grp. Inc. et al.*, No. 19-CV-06983 (CJC) (JCx), at *15-16 (C.D. Cal. Aug. 13, 2020) (citing *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 527-8 (2019)).

In response, Plaintiff meekly offers only one argument in a lone footnote: that there is an open question regarding whether a court must consider the sophistication of the parties to be bound by the incorporation of the AAA rules. (*See* Opp. at 19-20 n.45.) This position fails for several reasons. First, numerous courts within the Ninth Circuit have enforced delegation provisions like the one at issue here, even where the party provided evidence that it was unsophisticated. *See, e.g.*, *McLellan v. Fitbit, Inc.*, No. 3:16-cv-00036-JD, 2017 WL 4551484, at *2-3 (N.D. Cal. Oct. 11, 2017)

(incorporation of AAA arbitration rules constituted clear and unmistakable evidence of intent to arbitrate arbitrability where plaintiff highlighted status as a consumer); *Key v. Optum Servs., Inc.*, No. SACV 19-00813 AG (JDEx), 2019 WL 6736924, at *2 (C.D. Cal. July 29, 2019) (incorporation of the AAA rules constituted clear and unmistakable evidence of the agreement to arbitrate arbitrability where plaintiff claimed to be an unsophisticated party); *see also Miller*, 2016 WL 7471302, at *5 ("[T]he greater weight of authority has concluded that the holding of [*Brennan*] applies similarly to non-sophisticated parties.").

Even if hisسophistication were relevant, Plaintiff offers no evidence whatsoever that he is an unsophisticated party. To the contrary, the 2018 Terms of Service to which he assented required him to represent that he "underst[ood] the inherent risks associated with cryptographic systems; and warrant that [he had] an understanding of the usage and intricacies of native cryptographic tokens, like Ether (ETH) and Bitcoin (BTC), smart contract based tokens such as those that follow the Ethereum Token Standard . . . and blockchain-based software systems." (Becker Decl., Ex. A at 9-10.) In addition, the 2018 Terms of Service warned Plaintiff that "[a]ny use or interaction with the Dai System and Software requires a comprehensive understanding of applied cryptography and computer science in order to appreciate inherent risks," and required Plaintiff to "represent and warrant that [he] possess[ed the] relevant knowledge and skills." (*Id.* at 12.)

Even further, Plaintiff's own Complaint demonstrates that he is sophisticated with respect to cryptocurrency and the MakerDAO system. Plaintiff admits that he "was an early investor in ETH (dating back to March 2017) and actively participated in The Maker Foundation's software offerings; was among a handful of early Maker adopters and evangelists; [and] became a CDP Holder himself in November 2018 . . . ." (Amend. Compl. ¶ 4.) Indeed, in his declaration, Plaintiff emphasizes that he "tracked the Maker Platform closely, reading blogs, forums, and posts from Maker Entities members and officers." (Johnson Decl. ¶ 8.) Nothing more is required for Plaintiff to be a sophisticated party. *Brennan*, 796 F.3d at 1131 ("[I]t is undisputed that [plaintiff] was a sophisticated party, an experienced attorney and businessman . . . .").

Plaintiff's assertion that he is less sophisticated than the Maker Defendants (Opp. at 19 n.45) is based on the wrong standard. To the extent that courts within the Ninth Circuit look at

sophistication at all in this context, they analyze whether the party seeking to avoid the consequences of its agreement is sophisticated in its own right; they do not weigh the comparative sophistication of the parties. *See, e.g.*, *Caviani*, 2019 WL 4470820, at *5 (plaintiff was sophisticated where he was "a well-versed businessman, an MBA-program attendee, fluent in English, and had a 15-year history of business dealings"); *Kin Wah Kung v. Experian Info. Sols., Inc.*, No. C 18-00452 WHA, 2018 WL 2021495, at *4 (N.D. Cal. May 1, 2018) (plaintiff was sufficiently sophisticated where "he [was] not an unwary consumer," was a business owner, and "previously admitted to bringing twenty to thirty lawsuits at an oral hearing in another action before this Court").

Accordingly, the Court should deny Plaintiff's attempt to avoid the clear delegation of arbitrability to the arbitrator.

## III. Even if This Court Were to Decide Arbitrability, It Should Reject Plaintiff's Argument

Finally, even if this Court could decide whether Plaintiff's claims fall within the scope of the agreed-upon arbitration provision in the 2018 Terms of Service, Plaintiff's attempt to avoid his contractual agreement should be rejected. The Opposition repeatedly attempts to recast Plaintiff's allegations as involving only the upgraded system from 2019, which Plaintiff argues is an entirely separate system from the one on which Plaintiff opened his account in 2018. (*See* Opp. at 6-13.)[2] But the arbitration provision in the 2018 Terms of Service covers Plaintiff's entire use of the MakerDAO platform and makes no distinction between different versions of the system. Plaintiff does not (because he cannot) point to any aspect of the 2018 Terms of Service or the arbitration provision that limits their applicability solely to the version of the MakerDAO system existing at that time. To the contrary, as discussed above, the arbitration provision survives any termination of the

---

[2] To the extent that Plaintiff is seeking to admit the various websites and videos littered throughout his footnotes for the truth of the matters asserted therein, Plaintiff has not established that they are admissible (or could be presented in admissible form at any time in the future). *See PNR Mktg. Sols. LLC v. Fun Flicks of S. Cal.*, No. SACV 18-01600 AG (KESx), 2019 WL 3220020, at *2 (C.D. Cal. Apr. 22, 2019); *Ramirez v. Cintas Corp.*, No. C 04-00281 JSW, 2005 WL 658984, at *4 (N.D. Cal. Mar. 22, 2005). Further, Plaintiff has not sought judicial notice for any of these materials, nor could he as they are neither "generally known within the trial court's territorial jurisdiction" nor capable of being "accurately and readily determined from sources whose accuracy cannot reasonably be questioned." *See* Fed. R. of Evid. 201(b). Accordingly, the Court should not consider them for that purpose.

2018 Terms of Service. (*Supra* Section I.C.) Accordingly, Plaintiff lacks any basis to argue that the 2018 Terms of Service and arbitration agreement to which he agreed do not encompass his claims relating to his use of the system or the risks involved, which were clearly disclosed therein. (*See* Maker Def. Br. at 15.)

Consistent with this, and tellingly, Plaintiff's own pleadings filed in this action make no distinction whatsoever between the version of the MakerDAO system at the time he assented to the 2018 Terms of Service and later upgrades. Plaintiff's new assertions, made for the first time in the Opposition, stand in stark contrast to his Complaint and Amended Complaint, which:

- Allege only that Plaintiff "became a CDP Holder himself in November 2018," while making no mention of his newly alleged migration to MCD in 2019 (Amend. Compl. ¶ 4);

- Contain no reference to the term "Vault," which Plaintiff now claims is the distinguishing feature of the upgraded version of the MakerDAO system. As explained in the Maker Defendants' opening submission, the term "Vault" is synonymous with "CDP," which Plaintiff alleges he opened in 2018 (Maker Def. Br. at 5 n.3)[3];

- Do not even reference, let alone make any distinction between, different versions of the MakerDAO system; and

- Rely upon statements by MakerDAO and various third parties (attributing them to the Maker Defendants) that long pre-date the 2019 upgrade and in fact relate to the system as of the time Plaintiff opened his account (*see* Amend. Compl. ¶¶ 37, 45, 52).

Now, faced with the 2018 Terms of Service which Plaintiff concedes he reviewed and to which Plaintiff concedes he assented in November 2018, Plaintiff argues that it is no longer relevant

---

[3] In an effort to distinguish between the MakerDAO system at the time he opened his account in 2018 and the upgraded version released in 2019, Plaintiff claims that he closed his CDP and signed up for a Vault as part of an entirely separate sign up process. (*See* Opp. at 9, 12.) Although not relevant to the current Motion, Plaintiff overstates the facts. Indeed, Plaintiff's own assertion cannot be squared with other statements in his Opposition, which admit that he used a third-party application to upgrade automatically and did not need to go through a separate sign-up process at all. (*See id.*) This undermines Plaintiff's position that the 2019 upgraded version was an entirely separate and distinct system, his use of which is not governed by the 2018 Terms of Service.

*(cont'd)*

1 that he "became a CDP Holder himself in November 2018" (Amend. Compl. ¶ 4), but instead that
2 he purportedly "signed up for [the MCD system] in November 2019." (Opp. at 15.) According to
3 Plaintiff, the distinction between the different versions of the MakerDAO system is now crucial,
4 despite no mention of it anywhere in his Complaint or Amended Complaint. (*Id.* at 17.) The Court
5 should reject this about-face, particularly in light of the fact that Plaintiff's claims are based on
6 alleged statements that long pre-dated any upgrades in 2019.[4]

   Although not relevant to the current Motion, it bears noting that Plaintiff also repeatedly
8 mischaracterizes the facts, asserting that the Maker Defendants admitted on a weekly risk and
9 governance call that (i) they failed to provide adequate risk warnings about the risks inherent in the
10 MakerDAO system and (ii) third-party interfaces did not include or require review of any of the
11 Maker Defendants' materials, including the 2019 terms of service. (*See id.* at 2, 10, 15.) A review
12 of the cited video makes clear, however, that such assertions are inaccurate. Rather, the two speakers
13 that Plaintiff quotes are MakerDAO community members named "MakerMan" and "Mitote," neither
14 of whom are affiliated with the Maker Defendants in any way. (*See id.* at 2, 5, 10; *see also* Reply
15 Decl. of Steven Becker in Further Support of the Maker Defendants' Motion ("Becker Reply Decl.")
16 ¶ 3.)[5] Moreover, their discussion centers around whether the decentralized community that governs
17 the MakerDAO system (not the Maker Defendants) had provided certain warnings. *See* MakerDAO,

---

[4] Plaintiff's new assertions, if believed, cast serious doubt on his ability to sustain his claims, particularly whether Plaintiff can establish a duty on the Maker Defendants' part. *See* Cal. Civ. Code § 1714(a); *Worldwide Media, Inc. v. Twitter, Inc.*, No. 17-cv-07335-VKD, 2018 WL 5304852, at *9 (N.D. Cal. Oct. 24, 2018). Indeed, by arguing that the 2018 Terms of Service are not relevant to his claims and that he never agreed to the 2019 terms of service, Plaintiff has expressly disclaimed any contractual relationship between the parties or any duty by the Maker Defendants. Moreover, several allegations raised for the first time in the Opposition relate to third-party conduct, interfaces, applications and statements, demonstrating the Maker Defendants' inherent inability to possess control over the decentralized system. (*See, e.g.*, Opp. at 9-10, 12, 15-17.) For example, Plaintiff claims that at a Risk Meeting, participants noted the "lack of oversight over third-party interfaces" and that it is "ultimately not feasible 'in a decentralized system'" to require third-party interfaces to include an "acknowledgement or receipt of any of the Maker Defendants' materials." (*Id.* at 10; *infra* at 11 n.5.) Such allegations will likely prove to be serious obstacles to Plaintiff's claims.

[5] These statements are also inadmissible hearsay to which no exception applies. (*See also supra* n.4.) On a motion to compel arbitration, "the Court applies an evidentiary standard similar to the summary judgment standard" and can only consider evidence that could be produced in admissible form at trial. *PNR Mktg.*, 2019 WL 3220020, at *2; *Ramirez*, 2005 WL 658984, at *4 (statements made by AAA representatives were inadmissible hearsay not subject to any exception).

*Governance and Risk Meeting: Ep. 82*, YouTube, at approximately 51:00-55:00 (Mar. 24, 2020), https://www.youtube.com/watch?v=erh25lnaIo0&t=3152s.

Ultimately, Plaintiff is attempting to use the 2018 Terms of Service as a "sword" to create a duty on the part of the Maker Defendants while simultaneously seeking to avoid the arbitration provision contained therein. This is not permissible. *See Crypto Asset Fund LLC*, No. 19-CV-06983 (C.D. Cal. Aug. 13, 2020). Indeed, his agreement to the 2018 Terms of Service was a precondition to his creation of an account on, and use of, the MakerDAO system. (*See* Becker Decl., Ex. A ("[i]f [the user] do[es] not agree to the Terms, [the user] may not access or use" the MakerDAO system).) Plaintiff attempts to hold the Maker Defendants liable based on alleged duties he claims they owe with respect to his use of the MakerDAO system, while simultaneously trying to eschew any reciprocal obligations imposed by the 2018 Terms of Service which govern his use of the system.

While Plaintiff accuses the Maker Defendants of conflating the original and upgraded system as a "product of convenience to avoid a lawsuit" (Opp. at 17), a comparison of the Amended Complaint's allegations against Plaintiff's new assertions in the Opposition makes clear that it is actually Plaintiff that is shifting facts and theories when convenient – here, in an attempt to distract the Court from a binding agreement to arbitrate pursuant to the 2018 Terms of Service that Plaintiff cannot otherwise avoid. The Court should not permit Plaintiff to avoid arbitration by leveling assertions in the Opposition that are contrary to the allegations contained in multiple pleadings, much less endorse Plaintiff's attempt to avoid his contractual obligations. *See Verge Media Cos. v. Maccini*, No. CV 11–05520–MMM (JCx), 2011 WL 13220726, at *10 (C.D. Cal Oct. 17, 2011) (on motion to compel arbitration, plaintiff required to allege facts supporting its contentions in the complaint); *cf. Bankston v. Americredit Fin. Servs., Inc.*, No. C 09-04892 SBA, 2011 WL 89730, at *7 (N.D. Cal. Jan. 10, 2011) ("It is well settled that a party cannot avoid summary judgment by alleging facts in an opposition that were not alleged in the pleadings."); *Morgan v. Countrywide Home Loans, Inc.*, No. C 06-04766 SI, 2007 WL 80726, at *2 (N.D. Cal. Jan. 8, 2007) ("When

considering a motion to compel arbitration, a court applies a standard similar to the summary judgment standard of Fed. R. Civ. P. 56.").[6]

**CONCLUSION**

For the reasons stated, the Maker Defendants respectfully request that the Court compel arbitration and dismiss all proceedings in this action.

DATED: August 31, 2020

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

By: */s/ Peter B. Morrison*
PETER B. MORRISON
*Attorneys for Defendants*
MAKER ECOSYSTEM GROWTH HOLDINGS, INC.
AND MAKER ECOSYSTEM GROWTH FOUNDATION

---

[6] Plaintiff repeatedly claims that, had he not migrated to the upgraded system, he would not have lost the entirety of his collateral. (*See* Opp. at 12.) This new assertion, which is both speculative and unsupported, is contrary to his own Complaint and Amended Complaint, which do not reference different versions of the system, let alone that he would not have suffered any losses had he remained on the prior version. Furthermore, because Plaintiff admits that he assented to the 2018 Terms of Service, which is the only agreement the Maker Defendants seek to enforce here, his suggestion that he was incentivized to upgrade his account in 2019 is irrelevant to the present Motion.