Adam S. Heder, CSB #270946
adamh@hbclawyers.com
Harris Berne Christensen LLP
15350 SW Sequoia Parkway
Suite 250
Portland, OR 97224
Phone: 503-968-1475
Fax: 503-968-2003

Of Attorneys for Plaintiff PETER JOHNSON,
individually and on behalf of all others similarly situated

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| **PETER JOHNSON,** individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> **MAKER ECOSYSTEM GROWTH HOLDINGS, INC.**, a foreign corporation; **MAKER ECOSYSTEM GROWTH FOUNDATION,** a foreign corporation; and **DAI FOUNDATION**, a foreign corporation, <br><br> Defendants. | Case No. 3:20-cv-02569-MMC <br><br> **SUR-REPLY BRIEF IN OPPOSITION TO THE MAKER DEFENDANTS' MOTION TO COMPEL ARBITRATION** |

///

///

///

**ARGUMENT**

**I. Defendants cannot use the 2018 Terms to compel arbitration for a product and service that did not exist at the time.**

In the same breath, the Maker Defendants concede the browsewrap agreements are unenforceable and that Plaintiff was never presented with or required to acknowledge any terms of service when he created his Vault. They nonetheless insist on reply that there is no dispute that they can enforce the 2018 Terms of Service.[1] The Maker Defendants are wrong.

The Maker Defendants concede that they were never signatories to the 2018 Terms of Service (the "*2018 Terms*").[2] They implicitly concede that their 2019 Terms of Service (the "*2019 Terms*")—which have *never* been provided to the Court in the course of this Motion—are an unenforceable browsewrap agreement. However, the Maker Defendants ignore the fact that the 2018 Terms never included Vaults or multi-collateral Dai (which did not yet exist). Instead, they blithely assert that they are simply trying to enforce the 2018 Terms as though they apply with equal force to both CDPs *and* Vaults.

This is an argument of convenience rather than substance and fails because (1) CDPs and Vaults are not the same product, (2) all factual inferences and doubts must be drawn in favor of Plaintiff, and (3) Defendants' reliance on *Cooper v. Adobe Systems Inc.* is misplaced.

*1.    CDPs and Vaults are Distinct Products*

Without belaboring the facts presented in Plaintiff's Opposition Brief to the Maker Defendants' Motion to Compel Arbitration, Docket No. 43, (the "*Opposition*"), it bears repeating that, despite the Maker Defendants dismissive assertion that Vaults and CDPs are synonymous, *see* Reply at 10, that is simply not the case. As laid out in the Opposition, "the entire core" of the CDP-based Sai System had to be "rewritten," and that to take advantage of the Vault-based Dai System, all users had to "upgrade" to the Dai System—whether through the Maker Defendants'

---

[1] *See, e.g.*, The Maker Defendants' Reply Memorandum of Points and Authorities in Further Support of Their Motion to Compel Arbitration (the "*Reply*"), ECF Nos. 44, at 1, 2, 3, 5.

[2] *See* the Maker Defendants' Notice of Motion and Motion to Compel Arbitration; Memorandum of Points and Authorities in Support Thereof (the "*Opening Brief*"), ECF Nos. 41, at 17.

1
Sur-reply Brief in Opposition to Motion to Compel Arbitration

Exhibit 1
Page 2 of 8

own migration process, through a third-party process, or manually close their CDPs and open a new Vault.  *See* Opposition at 6–8. The Maker Defendants themselves wrote a blog post in October 2019 noting the distinction and stating, unequivocally, that although Dai-based collateral positions would be referred to as Vaults, "*for the current Single-Collateral Dai (Sai) deployment, no changes will be made to terminology.*"[3]

Perhaps most importantly, CDPs and Vaults *cannot be synonymous* because all CDPs and the Sai system itself have since been shut down.  *See* Opposition at 9–11.  Thus, by whatever name the Maker Defendants choose to call them, their Sai products (collateralized by CDPs) and their Dai products (collateralized by Vaults) were entirely different products on entirely different systems which required the formation of an entirely new collateral position to receive an entirely new cryptocurrency (Multi-Collateral Dai).[4]

Such a distinction is crucial because a new product—developed and released well after the 2018 Terms and after Plaintiff acknowledged the 2018 Terms—cannot be bootstrapped into an old agreement that never envisioned the product itself.  Indeed, as the Ninth Circuit has long held with regard to internet terms of service, "a party can't unilaterally change the terms of a contract; it must obtain the other party's consent before doing so . . . . because a revised contract is merely an offer and does not bind the parties until it is accepted.  And generally, an offeree cannot actually assent to an offer unless he knows of its existence."  *See Douglas v. US Dist. Court for Cent. Dist. Cal.*, 495 F.3d 1062, 1066 (9th Cir. 2007).

Here, including Vaults and multi-collateral Dai—products which did not exist at the time of the 2018 Terms—within the ambit of the 2018 Terms would require modification of the 2018

---

[3] *See* Opposition at 7, n.10 (citing The Maker Foundation Blog, *Say Goodbye to CDPs and Hello to Maker Vaults*, published October 31, 2019 (*available at*: https://blog.makerdao.com/say-goodbye-to-cdps-and-hello-to-maker-vaults/) (emphasis in original).

[4] To the extent that Plaintiff's Amended Complaint conflated these two terms, Plaintiff is willing to Amend his Complaint to conform to the evidence and the issues raised by this Motion and the Maker Defendants. The distinction between the Maker Defendants' two systems has only become relevant in light of the facts alleged and raised in connection with this Motion.  The Maker Defendants' assertions throughout their briefing that the Amended Complaint—lodged with the Court under a notice pleading standard—is somehow binding on this Motion is accordingly not well taken.

Terms. And since both sides concede that Plaintiff was never presented with subsequent terms of service this Court should conclude that the Maker Defendants are prohibited from unilaterally changing the terms of the 2018 Terms to prospectively apply to Plaintiff's Vault creation.

*2. Any factual inferences must be drawn in favor of the Plaintiff*

As the Maker Defendants note in their Reply, courts apply "a standard similar to the summary judgment standard" of Rule 56 when faced with arbitration questions. *See* Reply at 13. Thus, where a party opposes a motion to compel arbitration on the ground that no agreement to arbitrate was made, the Court "should give to the opposing party the benefit of all reasonable doubts and inferences that may arise." *Three Valleys Mun. Water Dist. v. E.F. Hutton & Co.,* 925 F.2d 136, 1141 (9th Cir. 1991) (quoting *Par-Knit Mills, Inc. v. Stockbridge Fabrics Co.,* 636 F.2d 51, 54 (3d Cir. 1980)). "Only when there is no genuine issue of fact concerning the formation of the [arbitration] agreement should the court decide as a matter of law that the parties did or did not enter into such an agreement." *Id.*

Here, the uncontested facts are (1) Plaintiff Peter Johnson acknowledged the 2018 Terms in connection with opening his Sai-based CDP, (2) the 2018 Terms have no counterparty or signatory, (3) the Maker Defendants updated their Terms at some point in 2019 (to ostensibly include themselves as a counterparty, but even this point is somewhat vague), and (4) Plaintiff was never presented with or acknowledged the 2019 Terms or any other terms in connection with opening his Dai-based Vault. At issue, then, is whether and to what extent Vaults represented an entirely new product and whether the 2018 Terms—or any terms at all—can be enforced with regard to Vaults.

The only appropriate inferences to draw here, based on the evidence in hand, is what the Maker Defendants themselves have long asserted: Vaults are an altogether new product which generate an altogether new cryptocurrency—multi-collateral Dai. Accordingly, there is at least a reasonable doubt that the 2018 Terms (or their unproduced 2019 counterpart) apply at all to Plaintiff's creation of a Vault through a third-party user interface. And with those facts and

inferences in mind, the only legal conclusion that can be drawn is that Plaintiff's acknowledgment of the 2018 Terms in connection with opening his 2018 CDP (and the Sai he received thereby) would only bind him to arbitrate disputes related to his 2018 CDP. Since Plaintiff indisputably closed his CDP and opened a Vault in late 2019, only terms which expressly contemplated and applied to Vaults and multi-collateral Dai would bind him to arbitrate disputes related to that Vault.

      3.      *Cooper* is instructive, but only as a foil to the current case.

Finally, the Court should reject the invitation to equitably enforce the 2018 Terms against Plaintiff and class members who have created Vaults. The thrust of the Maker Defendants' argument is that, because Plaintiff acknowledged the 2018 Terms, he is inextricably bound by those terms for time immemorial and with regard to any and all Maker Defendants products. But that argument is premised on distinguishable case law and contract principles.

The Maker Defendants rely heavily on *Cooper v. Adobe Systems Inc.*, 2019 WL 5102609—which they cite for the first time in the Reply—for the proposition that Plaintiff's distinction between CDPs and Vaults is about scope rather than formation of an arbitration agreement. But that is simply not the case.[5] Moreover, *Cooper* is easily and substantively distinguishable.

The *Cooper* court received evidence indicating that the plaintiff (Cooper) had viewed and accepted "Adobe's General Terms of Use" (the "*Adobe Terms*") when he signed up for and started licensing Adobe's "Creative Cloud" suite of software, including Lightroom, an application within Creative Cloud's suite. *See Cooper*, \*\*4–5. Subsequent to licensing Creative

---

[5] Importantly, "[c]ourts should not assume that the parties agreed to arbitrate arbitrability unless there is '*clear and unmistakable*' evidence that they did so." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (emphasis added) (brackets omitted); *accord AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986) ("Unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator."). "In this manner the law treats silence or ambiguity about the question 'who (primarily) should decide arbitrability' differently from the way it treats silence or ambiguity about the question 'whether a particular merits-related dispute is arbitrable because it is within the scope of a valid arbitration agreement'—for in respect to this latter question the law reverses the presumption." *First Options*, 514 U.S. at 944–45.

Cloud, Cooper had an issue with another application within the Creative Cloud suite—Premiere Pro CC—which caused him to lose important data and which prompted his suit against Adobe. *Id.* Cooper argued, unsuccessfully, that because he had never been presented with the Adobe Terms in connection with his use of another application within Creative Cloud, the terms and their arbitration provisions were not applicable against him. *Id.*

In finding that Cooper had acknowledged the Adobe Terms when he first downloaded and used an application within Creative Cloud (Lightroom), the *Cooper* court determined that the Adobe Terms and their accompanying arbitration provisions had been agreed to and were enforceable against Cooper with regard to his use of any application in the Creative Cloud suite—including the problematic Premier Pro CC. *Id.*

In so concluding, the Court made several salient findings and statements of law that are distinguishable from this matter, among them:

- Cooper "viewed and accepted *Adobe's* General Terms of Use";
- Cooper did not challenge that the Adobe Terms were "applicable to all programs within Creative Cloud, *including* Lightroom and . . . Premiere Pro CC";
- "Adobe did not change the Dispute Resolution procedure in its General Terms of Use" between the time that Cooper "clicked and accepted those terms" and "when Cooper used" Premiere Pro CC;
- Decisions of whether to compel arbitration depend on two determinations: "(1) whether there is an agreement to arbitrate between the *parties*; and (2) whether the agreement covers the dispute"; and
- Delegation of issues to an arbitrator is appropriate only "where the *parties* clearly and unmistakably provide otherwise."

*Id.* at **5–6, 8 (citations omitted) (emphases added). Here, both the 2018 Terms themselves and the substantive nature of CDPs and Vaults are entirely unlike the Adobe Terms and the Creative Cloud suite analyzed in *Cooper*.

First, the 2018 Terms bear no resemblance to the Adobe Terms. Unlike Adobe—a named party in all versions of the Adobe Terms—the Maker Defendants were never a named party to the 2018 Terms. Indeed, there is *no* named counterparty in the 2018 Terms.[6]

---

[6] *See* 2018 Terms, *available at*: https://cdp.makerdao.com/terms. And while the Maker Defendants have asserted

5
Sur-reply Brief in Opposition to Motion to Compel Arbitration

Exhibit 1
Page 6 of 8

Additionally, where the *Cooper* court went out of its way to note that there had been no substantive changes in operative versions of the Adobe Terms, there is simply no evidence before the Court that the 2019 Terms have not altered dispute resolution procedures or any other substantive provisions of the 2018 Terms.[7] We are thus left to guess as to what changes may have been included in those 2019 Terms.[8]

Furthermore, where neither of the *Cooper* parties contested that the Adobe Terms applied to "all programs within Creative Cloud," Plaintiff has contested and does contest the applicability of the 2018 Terms to his creation of a Vault.

Finally, an examination of the 2018 Terms themselves and those facts set forth in the Opposition demonstrate that Vaults and multi-collateral Dai were not included or envisioned in the 2018 Terms, but rather an entire rewrite and relaunch of a new product that users were urged to migrate to use.[9]  There is no dispute that Vaults and multi-collateral Dai were not contemplated by the 2018 Terms as those products *did not yet exist*. *See* Opposition at 6–9. Moreover, and unlike the Adobe Creative Cloud, CDPs and Vaults were not related products released and licensed under a unifying suite. Rather, Vaults were an entirely rewritten, renamed, and remarketed product that would *replace* CDPs.

Thus, in contrast to *Cooper*, whose plaintiff *downloaded* and *licensed* Creative Cloud and all its accompanying features and applications—including both Lightroom and Premiere Pro CC—here, neither Vaults nor multi-collateral Dai were or could have been included in the 2018 Terms. For these reasons alone, the Court should conclude that the 2018 Terms and their arbitration provisions are not binding and do not apply with regard to Plaintiff's Vault creation.

---

that the 2019 Terms corrected that omission, no documentary evidence has been provided to the Court to support that allegation.

[7] Moreover, as discussed above, part I.1, substantive modifications of the 2018 Agreement would require the assent of Plaintiff or anyone similarly situated to be enforceable.

[8] And, as noted above, part I.2, all inferences and doubts must be drawn in favor of Plaintiff.

[9] *See id*.

## CONCLUSION

Neither party contests that browsewrap agreements are presumptively unenforceable. But the Maker Defendants fail to even grapple with the fact that Plaintiff was never presented with terms of service when he created a Vault and generated Dai. Rather, they point to the 2018 Terms as their lone hook for enforcing arbitration.[10] For the reasons set forth above, that hook carries no weight. The Court should accordingly deny the Motion.

DATED: September 11, 2020                           **HARRIS BERNE CHRISTENSEN LLP**

By:   /s/ Adam S. Heder
      Adam S. Heder, CSB #270946
      Of Attorneys for Plaintiff PETER JOHNSON,
      individually and on behalf of all others similarly
      situated

---

[10] Even if the Court determines—and it should not—that the 2018 Terms somehow apply to Plaintiff's use of a product that did not yet exist when such Terms were written, the Maker Defendants herein concede that there is a large swath of class members case who have *never* been presented with *any* terms of service in connection with their Vaults, and thus this class action should be allowed to proceed on its own terms.