Adam S. Heder, CSB #270946
adamh@hbclawyers.com
Harris Berne Christensen LLP
15350 SW Sequoia Parkway
Suite 250
Portland, OR 97224
Phone: 503-968-1475
Fax: 503-968-2003

    Of Attorneys for Plaintiff PETER JOHNSON, individually and on behalf of all others similarly situated

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| **PETER JOHNSON,** individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br>v.<br><br>**MAKER ECOSYSTEM GROWTH HOLDINGS, INC.**, a foreign corporation; **MAKER ECOSYSTEM GROWTH FOUNDATION,** a foreign corporation; and **DAI FOUNDATION**, a foreign corporation,<br><br>    Defendants. | Case No. 3:20-cv-02569-MMC<br><br>**PLAINTIFF'S MOTION FOR PERMISSION TO SEEK INTERLOCUTORY REVIEW PURSUANT TO 28 U.S.C. § 1292(b)** |

## RELIEF REQUESTED

Mr. Johnson respectfully requests that this Court permit him, pursuant to 28 U.S.C. § 1292(b), to seek interlocutory review of the Court's Arbitration Order on the following questions: whether it was error to (1) decide the Arbitration Order without requiring production and review of the 2019 Terms and (2) determine that Mr. Johnson was sophisticated based solely on his

1

cryptocurrency and technical knowledge.

With special regard to the second question, a split in the Ninth Circuit district courts—and even this district—has developed around whether and to what extent a "sophisticated party" should be bound from the outset of a dispute to arbitration by mere acknowledgement of an arbitration clause. Resolution of that split, and elucidation of what makes a party "sophisticated" will necessarily inform and likely change this Court's analysis in the Arbitration Order.  In light of that question, together with the first-time availability of the 2019 Terms (which wholesale change the dispute resolution mechanisms at issue here), Mr. Johnson respectfully requests that this Court certify the Arbitration Order as one which may be reviewed on an interlocutory basis.

## MEMORANDUM OF POINTS AND AUTHORITIES

### BACKGROUND

*Procedural Posture*

Plaintiff brought suit against the Maker Defendants on April 14, 2020.  The operative Complaint in this matter was filed on May 8, 2020. On July 15, 2020, the Maker Defendants moved to compel arbitration (the "***Motion to Compel***"), arguing that Mr. Johnson's acknowledgement of the 2018 Terms was enough to enforce the subsequently amended 2019 Terms against him.  The Maker Defendants never submitted the 2019 Terms for the District Court's review.[1]

Mr. Johnson vehemently opposed the Motion to Compel, urging the Court to recognize that his acknowledgement of the 2018 Terms in connection with the Maker Defendants' deprecated

---

[1] Through his own scouring of the internet, Plaintiff has obtained what he presumes is copy of the 2019 Terms, a true and accurate copy of which is attached hereto as Exhibit 1; the terms are also available at https://oasis.app/terms (last visited October 22, 2020).

2

Plaintiff's Motion for Interlocutory Review

Sai system did not and could not subject him to the 2019 Terms in connection with the Maker Defendants' new Dai System.  On reply, the Maker Defendants' relied heavily on *Cooper v. Adobe Systems Inc.*, 2019 WL 5102609, Case No. 18-cv-06742-BLF, arguing that Mr. Johnson's argument was not about the formation of an agreement of the parties, but rather "whether his claims 'fall within the scope' of the arbitration clause."[2]

In the course of briefing the Motion to Compel, the Maker Defendants conceded that they were never signatories to the 2018 Terms.[3] They implicitly conceded that their 2019 Terms of Service were an unenforceable browsewrap agreement that Mr. Johnson never saw or acknowledged. And, perhaps most importantly, neither the Maker Defendants nor the District Court grappled with the fact that the 2018 Terms and the 2019 Terms are entirely different agreements with entirely different scopes, counterparties, dispute resolution mechanisms, and even controlling law.

Ultimately, the District Court agreed with the Maker Defendants on the issue of scope, concluded that Mr. Johnson had "agreed to delegate to the arbitrator the issue of arbitrability" since Mr. Johnson had acknowledged the 2018 Terms, and ordered the case sent to arbitration.[4] Importantly, the District Court relied on the fact that the 2018 terms "incorporate[ ] the AAA rules, and, pursuant to those rules, 'the arbitrability of any claim' is delegated to the arbitrator."[5]  The District Court also determined that Mr. Johnson was not unsophisticated solely because of his

---

[2] *See* Order Granting Defendants' Motion to Compel Arbitration (the "Arbitration Order"); Vacating Hearing; Staying Claims, ECF No. 48.

[3] *See* the Maker Defendants' Notice of Motion and Motion to Compel Arbitration; Memorandum of Points and Authorities in Support Thereof (the "***Opening Brief***"), ECF No. 41, at 17.

[4] *See generally*, the Arbitration Order.

[5] *Id.* at 2–3.

technical understanding of the Maker Defendants' products, as well as blockchain and cryptocurrencies generally.[6]

*The 2019 Terms' Arbitration Provision are Completely Rewritten*

The 2019 Terms—produced for judicial review here for the first time—have altered the entirety of the 2018 Terms, including the arbitration clause the Maker Defendants rely on.  Where the 2018 Terms contained *no* counterparty, the 2019 Terms include and finally name Maker Ecosystem Growth Holdings, Inc. Where the 2018 Terms purported to only control the use of the cdp.makerdao.com site and accompanying services, the 2019 Terms purport to control the use of the Maker Defendants "websites, currently located at oasis.app, mobile applications, web applications, decentralized applications, smart contracts and API . . . ."  Where the 2018 Terms compelled AAA arbitration under Delaware law, the 2019 Terms compel JAMS arbitration under New York law.  And where the 2018 Terms award the prevailing parties their attorney fees, the 2019 Terms state both parties cover their own costs.  Indeed, in light of the Court's order and the Maker Defendants' vacillating positions, it is not even clear what arbitration service Mr. Johnson is being compelled to use.

In short, the 2019 Terms—which all parties agree were never reviewed or acknowledged by Mr. Johnson—were the first terms to name the Maker Defendants as a party, were the first to even purport to govern Mr. Johnson's Vault, and substantively altered the entire dispute resolution mechanism to which the District Court ordered the parties.

## **ARGUMENT**

This Court should allow the Ninth Circuit to review the Arbitration Order on an

---

[6] *See id.* at 2, n.4.

interlocutory basis. 28 U.S.C. §1292(b) permits a district judge to certify an otherwise non-final order for interlocutory review if "there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation." The questions raised in the Arbitration Order regarding (1) the scope and applicability of the 2018 Terms and 2019 Terms and (2) Mr. Johnson's subjective sophistication are both questions which merit review and opinion from the Ninth Circuit. Receiving that clarity from the Ninth Circuit will allow the Parties to more expeditiously resolve this case and would obviate the need for an appeal after months or years of arbitration. Accordingly, and for the reasons set forth below, this Court should certify the Arbitration Order for interlocutory review.

*Scope of 2018 Terms vs. 2019 Terms*

The Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* requires federal district courts to stay judicial proceedings and compel arbitration of claims covered by a written and enforceable arbitration agreement. *Id.* § 3. "The FAA limits the district court's role to determining whether a valid arbitration agreement exists, and *whether the agreement encompasses the disputes at issue*."[7] Here, even the Maker Defendants conceded that the 2019 Terms control the product and conduct at issue in the lawsuit—the Black Thursday events which liquidated Mr. Johnson's Vault and sold the entirety of his collateral for nothing. Given that the 2018 Terms have an extraordinarily narrow scope—applying only to those "dispute[s] arising under" the 2018 Terms themselves—it was error to conclude, without at least first reading the 2019 Terms, that the scope of the 2018 Terms could extend beyond their own very narrow scope. More to the point, in light of the subsequent and substantial alterations to the 2019 Terms, their applicability at all in a case where Mr. Johnson

---

[7] *Nguyen v. Barnes & Noble, Inc.*, 763 F. 3d 1171, 1175 (9th Cir. 2014) (emphasis added).

concededly *did not view, acknowledge, or otherwise receive them* can and should be resolved by the District Court.

Here, the Maker Defendants never produced the 2019 Terms—despite having them in hand and having the burden of demonstrating their applicability to the case at hand. The substantial and substantive changes between the 2018 and 2019 Terms moot the question of arbitrability since only the 2018 Terms were viewed by Mr. Johnson. As the Ninth Circuit has long held with regard to internet terms of service, "a party can't unilaterally change the terms of a contract; it must obtain the other party's consent before doing so . . . . because a revised contract is merely an offer and does not bind the parties until it is accepted. And generally, an offeree cannot actually assent to an offer unless he knows of its existence."[8] If not corrected now, Mr. Johnson's case will be prematurely sent to an arbitrator regarding the very question of arbitrability—an expensive proposition, and one that could be procedurally difficult (if not impossible) to review later.

*Mr. Johnson is an Unsophisticated Party*

Inquiries about whether the parties clearly and unmistakably delegated arbitrability by incorporation of arbitration rules should first consider the position of those parties.[9] The Ninth Circuit has raised and left open the question of party sophistication since *Brennan v. Opus Bank*, 796 F. 3d 1125 (9th Cir. 2015). As this Court correctly noted in its Arbitration Order, there is now

---

[8] *See Douglas v. US Dist. Court for Cent. Dist. Cal.*, 495 F.3d 1062, 1066 (9th Cir. 2007) ("Even if [Plaintiff's] continued use of [the company's] service could be considered assent, such assent can only be inferred after he received proper notice of the proposed changes.").

[9] *See Rent-A-Ctr.*, 561 U.S. at 70 n. 1, 130 S.Ct. 2772 (explaining that the "clear and unmistakable" requirement "is an 'interpretive rule,' based on an assumption about the parties' expectations"); *see also Mohamed v. Uber Technologies, Inc.*, No. C-14-5200 EMC, 2015 WL 3749716, at *10 (N.D.Cal. June 9, 2015) ("[W]hether the language of a delegation clause is 'clear and unmistakable' should be viewed from the perspective of the particular parties to the specific contract at issue. What might be clear to sophisticated counterparties is not necessarily clear to less sophisticated employees or consumers.").

6

Plaintiff's Motion for Interlocutory Review

"a split in the Ninth Circuit District Courts about whether incorporating the AAA Rules by references applies to unsophisticated parties," *id.* at 2, n.4.  That said, "the majority of the lower courts in the Ninth Circuit have held that incorporation of the AAA rules was insufficient to establish delegation in consumer contracts involving at least one unsophisticated party."[10]

Here, this Court concluded that Mr. Johnson "is not unsophisticated" because of his technical knowledge of the underlying Maker Defendants' products and protocols, *id.*, but did not cite any authority supporting the notion that technical knowledge of a system could make Mr. Johnson *legally* sophisticated—i.e., sophisticated enough to appreciate the sweeping ramifications of incorporation of AAA rules.

A recent Ninth Circuit opinion, *Galilea, LLC v. AGCS Marine Ins. Co.*, 879 F.3d 1052, is instructive.  There, the Ninth Circuit reviewed the question of arbitration delegation in an insurance policy between an insurance company and the owners of a million-dollar, sixty-foot yacht (Galilea, LLC).  In its analysis of the contract, the *Galilea* court determined that both parties were "sophisticated with respect to contracting for insurance policies." *Id.* at 1062.  In relevant part, the court concluded that the consumer—Galilea, LLC—was sophisticated, *not* because the company or its members were technical experts in the underlying product or activity—yachting—but rather because (1) they "formed a limited liability company under Nevada law to own  and maintain a yacht worth more than a million dollars," and (2) one of the members "owns and operates a

---

[10] *Eiess v. USAA Fed. Sav. Bank*, 404 F. Supp. 3d 1240, 1253 (N.D. Cal. 2019) (internal citations omitted) (collecting cases including *Money Mailer, LLC v. Brewer*, No. 15-1215, 2016 WL 1393492, at *2 (W.D. Wash. Apr. 8, 2016); *Galilea, LLC v. AGCS Marine Ins. Co.*, No. 15-0084, 2016 WL 1328920, at *3 (D. Mont. Apr. 5, 2016), overruled on other grounds by 879 F.3d 1052, 1062 (9th Cir. 2018); *Vargas v. Delivery Outsourcing, LLC*, No. 15-03408, 2016 WL 946112, at *8 (N.D. Cal. Mar. 14, 2016); *Aviles v. Quik Pick Express, LLC*, No. 15-5214, 2015 WL 9810998, at *6 (C.D. Cal. Dec. 3, 2015), vacated on other grounds by 703 Fed. Appx. 631, 632 (9th Cir. 2017); *Meadows v. Dickey's Barbecue Restaurants Inc.*, 144 F. Supp. 3d 1069, 1078 (N.D. Cal. 2015)).

Plaintiff's Motion for Interlocutory Review

financial services company." *Id.* In other words, Galilea and its members had extensive business and financial experience and had taken substantial legal steps to incorporate and protect themselves from liability.

Here, the Court has conflated Mr. Johnson's technical knowledge of the underlying, enabling technology with the kind of business or legal acumen of large corporations, businesspeople, or lawyers. Put in context, Mr. Johnson is an ordinary, if well-versed, consumer of the Maker Defendants' products; he is *not* an experienced businessman or lawyer.[11]

This comports with conclusions of other courts in this very district. When faced with the question of sophistication in arbitration delegation, the *Galilea* district court emphasized that "an inexperienced individual *untrained in the law*" is less likely to understand the incorporation of arbitrator rules into an arbitration agreement.[12] After all, if the question is whether the language of an agreement provides "clear and unmistakable" evidence of delegation, to a large corporation (like Oracle) or a sophisticated attorney (like Brennan) or business (like Galilea, LLC), it is reasonable to conclude that it does. But applied to an inexperienced individual, untrained in the law and lacking business acumen like Mr. Johnson and the countless potential class members in this litigation—each mere consumers of the Maker Defendants' products—such a conclusion is far less reasonable.

Ultimately, an unsophisticated party should not bound by the AAA Rules incorporated by

---

[11] *See, e.g., Ingalls v. Spotify USA, Inc.,* No. C 16-03533 WHA, 2016 WL 6679561, at *4 (N.D. Cal. Nov. 14, 2016) (finding that "the parties, which included two ordinary consumers who could not be expected to appreciate the significance of incorporation of the AAA rules, did not clearly and unmistakably intend to delegate the issue of arbitration to an arbitrator"); *Galilea, LLC v. AGCS Marine Ins. Co.,* No. CV 15-84-BLG-SPW, 2016 WL 1328920, at *3 (D. Mont. April 5, 2016); *Meadows v. Dickey's Barbecue Restaurants, Inc.,* 144 F.Supp.3d 1069, 1078-79 (N.D. Cal. 2015).

[12] *See Galilea, LLC*, at *3 (emphasis added).

8

Plaintiff's Motion for Interlocutory Review

reference because they cannot "be expected to appreciate the significance of incorporation of the AAA rules."[13] And nothing in Mr. Johnson's knowledge of blockchain or the Maker Defendants' products could have alerted him to the breadth and depth of issues raised by incorporating AAA rules into an agreement which he was presented once, and which agreement was subsequently, substantially, and materially altered without ever being presented to him again.  To conclude otherwise would eviscerate the FAA's policy "*against* the arbitrability of arbitrability" in any situation where a consumer has taken the time to understand the product or service he has consumed.  *See Galilea, LLC*, 879 F.3d 1052 at 1061.

## CONCLUSION

For the reasons set forth above, this Court should grant Mr. Johnson permission to seek interlocutory review of this matter. Doing so will not only foster judicial efficiency and preserve the parties' respective fees and resources, it will also allow the Ninth Circuit to settle a growing divide in its district courts regarding the question of sophistication in arbitrability.

DATED:  November 13, 2020                    **HARRIS BERNE CHRISTENSEN LLP**

By:    /s/ Adam S. Heder
    Adam S. Heder, CSB #270946
    Of Attorneys for Plaintiff PETER JOHNSON,
    individually and on behalf of all others similarly
    situated

---

[13] *Ingalls v. Spotify USA, Inc.*, No. C 16-03533 WHA, 2016 WL 6679561, at *4 (N.D. Cal. Nov. 14, 2016); *see also Tompkins v. 23andMe, Inc.*, No. 5:13-CV-05682-LHK, 2014 WL 2903752, at *10-13 (N.D. Cal. June 25, 2014) (stating, inter alia, that "the arbitration provision contains no express delegation language, and its mention of the 'rules and auspices' of the AAA creates multiple ambiguities about which rules ultimately apply[;] [t]his language forces a customer to comprehend the import of the 'rules and auspices' of the AAA; locate those rules independently; determine that the AAA's Commercial Rules apply by operation of Rule R-1(a); and then specifically identify Rule R-[14](a) to learn of the delegation provision.").