1    Adam S. Heder, CSB #270946
     adamh@hbclawyers.com
2    Harris Berne Christensen LLP
     15350 SW Sequoia Parkway
3    Suite 250
     Portland, OR 97224
4    Phone: 503-968-1475
     Fax: 503-968-2003
5
         Of Attorneys for Plaintiff PETER JOHNSON, individually and on behalf of all others
6    similarly situated
7

8                    IN THE UNITED STATES DISTRICT COURT

9                FOR THE NORTHERN DISTRICT OF CALIFORNIA

10                      SAN FRANCISCO DIVISION

11

12   **PETER JOHNSON,** individually and on        Case No. 3:20-cv-02569-MMC
     behalf of all others similarly situated,
13                                                 **REPLY BRIEF IN SUPPORT OF**
                        Plaintiff,                 **PLAINTIFF'S MOTION FOR**
                                                   **PERMISSION TO SEEK**
14          v.                                     **INTERLOCUTORY REVIEW**
                                                   **PURSUANT TO 28 U.S.C. § 1292(b)**
15   **MAKER ECOSYSTEM GROWTH**
     **HOLDINGS, INC.**, a foreign corporation; and
16   **MAKER ECOSYSTEM GROWTH**
     **FOUNDATION,** a foreign corporation,
17
                        Defendants.
18

19
            Defendants' opposition brief is a protracted obfuscation of the actual issues and requests
20
     before the Court.  Mr. Johnson is not asking this Court to determine whether its Order, dated
21
     September 25, 2020 (ECF No. 48), is appealable.  28 USC § 1292(b) is clear that only the Court
22
     of Appeals has that authority.  Rather, Mr. Johnson is asking this Court simply for *permission* to
23
     ask for review from the Ninth Circuit.  Under Ninth Circuit precedent, seeking interlocutory review
24

                                                  1

Plaintiff's Reply Brief in Support of Motion for Permission to Seek Interlocutory Review

1   is a two-step process.  First, the District Court must give permission for an interlocutory appeal.

2   And second, the Ninth Circuit must then determine whether the issues raised justify interlocutory

3   appellate review.  *See* 28 USC 1292(b); *Gonzalez v. Coverall N. Am. Inc.,* 754 F. App'x 594, 595

4   (9th Cir. 2019).  Implicitly, this Court's task is more deferential because it is not making any

5   determinations on appealability.  That is, of course, as it should be because it would not make

6   sense to designate the District Court as the gatekeeper of whether its own orders are appealable.

7   In that context, Defendants' arguments can largely be ignored or dismissed as premature or

8   inappropriate at this stage of the proceeding.

9          Defendants' arguments fare no better on the merits.  Instead, they obfuscate what are

10  otherwise two straightforward issues and questions for the Court.

11          **I.          As an initial matter, Mr. Johnson's motion is not untimely and Defendants'
                          argument to the contrary is remarkably disingenuous.**

12          Section 1292(b) provides no time limit for seeking certification.  Nor is Mr. Johnson in any

13  way untimely in filing his claims in arbitration.  Nor can Defendants identify any prejudice they

14  have suffered because of Mr. Johnson's so-called dilatory response.  Nor can Defendants explain

15  how the timeframe at issue in any way slowed down any proceeding at all.  Mr. Johnson could go

16  on, but the Court gets the point.

17          In fact, Mr. Johnson did not request permission sooner because he was engaging in

18  settlement efforts with the Defendants.[1]  Defendants surely would not suggest that efforts at early

19  out-of-court resolutions were a bad thing, especially when Defendants themselves invited and

20  welcomed those efforts.  Mr. Johnson would be remiss to not point out Defendants' often delayed

21  response times.[2]  In short: Defendants invite settlement efforts; Mr. Johnson takes them up on the

22

23

24
[1] Declaration of Adam Heder ("Heder Decl.") ¶¶ 4-6.
[2] Heder Decl. ¶¶ 4-6.

2

Plaintiff's Reply Brief in Support of Motion for Permission to Seek Interlocutory Review

1 offer, which results in lengthy back and forth; those efforts are ultimately unsuccessful; and now,

2 because Mr. Johnson was engaging in good faith efforts to settle matter (which of course all courts

3 have a policy of promoting), Defendants claim the motion is untimely.

4    Mr. Johnson has not violated any time requirements and has not been dilatory.  And

5 Defendants cannot argue they have been prejudiced or otherwise affected by any timing here.  Mr.

6 Johnson's motion is not untimely.

7 **II.    Even setting aside the Court's limited review, Mr. Johnson has presented two straightforward legal questions that satisfy 28 USC 1292(b).**

8    Under Ninth Circuit law, a litigant must first obtain permission from the District Court to

9 seek interlocutory review before the Ninth Circuit for any order that "involves [1] a controlling

10 question of law as to which there is [2] substantial ground for difference of opinion and that [3] an

11 immediate appeal from the order may materially advance the ultimate termination of the

12 litigation."  28 U.S.C. § 1292(b).

13    Mr. Johnson has presented two controlling questions of law for the Court, which, despite

14 Defendants' attempts to mystify, are straightforward, significant, and present important

15 opportunities for clarification and resolution from the Ninth Circuit.

16    1) In delegating the arbitrability of a dispute, to what extent should a court consider the

17    business and/or legal sophistication of the non-moving party?  and

18    2) Can a court compel arbitration under an agreement that has been superseded by an

19    unenforceable browsewrap agreement?

20    Both questions present clear questions of law for which there is substantial ground for

21 difference of opinion.  Further, as discussed in the final section of this brief, allowing Plaintiff to

22 seek interlocutory appeal of these now will potentially save the litigants hundreds of hours and

23 countless attorney fees.

24

Plaintiff's Reply Brief in Support of Motion for Permission to Seek Interlocutory Review

1

Mr. Johnson addresses each question in turn.

2

### a. This case presents an opportunity to clarify and resolve the significance of a party's sophistication in delegating the arbitrability of a dispute.

3

4

There is a split both within the Circuit as to whether the presence of an unsophisticated

party prevents a court from delegating the arbitrability of a given dispute.  This Court recognized

5

that authority split in its own Order.[3]  Within that split, at least one Ninth Circuit decision has held

6

that a party's *business and/or legal acumen and savvy* determines whether the party is

7

sophisticated for purposes of an arbitrability/delegation analysis.  *Galilea, LLC v. AGCS Marine*

8

*Ins. Co.*, 879 F.3d 1052 (9th Cir. 2018).   In its Order, however, this Court focused its

9

"sophistication" analysis on whether Mr. Johnson understood the product at issue, not whether he

10

had sufficient business or legal acumen to understand the significance of a AAA arbitration

11

provision.[4]  And thus, not only is the relevance of a party's sophistication in a delegation analysis

12

unsettled in this Circuit,  but so too is the question of what constitutes "sophistication" for purposes

13

of that same analysis.

14

Again, the Court is not required to determine whether this should justify an interlocutory

15

appeal.  That is for the Court of Appeals to determine.  This Court's task is only to determine

16

whether Mr. Johnson *may* seek that review in the first place.

17

Setting that crucial distinction aside, Defendants needlessly complicate the analysis in

18

several key respects.  First, Defendants falsely argue Mr. Johnson failed to raise this argument,

19

stating that "Plaintiff never argued that he was unsophisticated, even in his improperly submitted

20

sur-reply." (ECF No. 55 at p. 10).  To the contrary, Mr. Johnson's Opposition to the Motion to

21

22

---

23

[3] *See* Order Compelling Arbitration ("Order"), ECF No. 48 at 2, n.4 ("As Plaintiff acknowledges there is 'a split in the Ninth Circuit District Courts about whether incorporating the AAA Rules by reference applies to unsophisticated parties . . . . (citations omitted)).

24

[4] *See* Order at 2, n.4.

4

Plaintiff's Reply Brief in Support of Motion for Permission to Seek Interlocutory Review

1   Compel (ECF No. 43) states in footnote 45 on p. 19: "[T]here has formed a split in Ninth Circuit

2   District Courts about whether incorporating the AAA Rules by reference applies to unsophisticated

3   parties, *as Mr. Johnson no doubt is* vis-à-vis the Maker Defendants."  (Emphasis added).

4        Further, Defendants' characterization of the relevance of the *Galilea* decision misleads.

5   Far from being "bizarre," Mr. Johnson cites the district court opinion to highlight that whether a

6   party's sophistication turns on that party's business and legal sophistication, not simply whether

7   they understand the product being sold.  Put another way, the *Galilea* district court stated the

8   sophistication rule correctly.  Indeed, the Ninth Circuit did not question the district court's

9   formulation of the sophistication analysis; rather, it *affirmed* the importance of a party's legal and

10  business sophistication (while reversing the district court's ultimate conclusion that the party

11  wasn't sophisticated).  *Galilea*, 879 F.3d at 1062.

12       Nor does it matter, contrary to Defendants' argument, whether the Court assumed the

13  relevance of Mr. Johnsons' sophistication. Because even if it did, the Court focused on Mr.

14  Johnson's technical sophistication from being an early investor in Ethereum, not on whether Mr.

15  Johnson had any business or legal acumen that would qualify him to understand complex and

16  sophisticated contracts.   The Court's decision and the Ninth Circuit's *Galilea* opinion highlight

17  the room for disagreement on the importance of a party's business and legal sophistication as

18  opposed to that party's sophistication vis-à-vis the product being sold.  Again, Mr. Johnson is not

19  asking the Court to reconsider its Order.  And the Court is not being asked to re-adjudicate these

20  issues.  Instead, Mr. Johnson is only asking the Court to give him permission to seek appellate

21  review of what this Court has already recognized is an unresolved issue in the Circuit.

22       It is difficult to imagine an issue riper for interlocutory review than one that this Court and

23  the Circuit both acknowledge is unsettled in this case and about which different judges within this

24

Plaintiff's Reply Brief in Support of Motion for Permission to Seek Interlocutory Review

1
2
3
4

Court and within the Circuit have reached different conclusions.  Where the standard looks at whether there is a controlling question of law about which there is substantial ground for difference of opinion, the Court could have no better candidate than an issue for which there is even an intra-Circuit split.

5

### b. This case also represents a rare opportunity to address the novel questions surrounding the arbitrability of expired internet contracts.

6
7
8
9
10
11
12
13
14
15

Outside of exceptional circumstances not present here, a party cannot be compelled to arbitrate where that party never agreed to an arbitration provision.  Though Mr. Johnson acknowledges viewing the 2018 Terms of Service, those Terms of Service were updated in 2019, per the Maker Defendants' own concession.  And undisputedly, Mr. Johnson's allegations arise out of an error in the Dai System at a time when even the Maker Defendants concede the 2019 Terms of Service applied.  Moreover, the Maker Defendants have asked this Court to ignore the fact that they were not parties to the 2018 Terms of Service, because, they claim, that omission was cured by the 2019 Terms of Service.  And thus, the question emerges: Can a court compel arbitration under an agreement that has been superseded by an unenforceable browsewrap agreement?

16
17
18

Though Mr. Johnson contends the question should be answered in the negative, the Court's task is not to actually address the substance of that question.  Rather, the Court's task is simply to determine whether Mr. Johnson can seek appellate review of these important questions.

19
20
21
22
23
24

But in either event, contrary to Defendants' obfuscation, the questions above represent clear instances of "controlling questions of law" about which "there is substantial ground for difference of opinion."  Indeed, as Defendants' own brief points out, "[c]ourts traditionally will find that a substantial ground for difference of opinion exists where . . . novel and difficult questions of first impression are presented." *Couch v. Telescope, Inc.*, 611 F.3d 629, 633 (9th Cir.

Plaintiff's Reply Brief in Support of Motion for Permission to Seek Interlocutory Review

1   2010).  Plaintiff has not identified any directly on point case law for either question presented

2   above.  Nor, frankly, have Defendants.  In the realm of enforcing competing versions of an

3   unenforceable browsewrap agreement, the field is white and ready to harvest.  In fact, the only

4   case the parties found on point was *Cooper v. Adobe Systems, Inc.*, No. 18-CV-06742-BLF, 2019

5   WL 5102609 (N.D. Cal. Oct. 11, 2019), which as the prior briefing demonstrated, highlighted the

6   room for disagreement on the questions presented above.

7       As further proof of the importance of this question and the potential for disagreement, in

8   their Motion to Compel Arbitration, the Maker Defendants assert that, even though they were not

9   signatories to the 2018 Terms of Service, they can nevertheless enforce the 2018 Terms of Service,

10  because "[t]he Maker Defendants . . . adopted in 2019 Terms of Service that apply to any new

11  accounts created and specifically identified [Maker Ecosystem Growth Holdings, Inc.] as a

12  signatory."  ECF No. 41 at p. 21.  In other words, it's okay that the Maker Defendants weren't

13  actually signatories to the very contract they're trying to enforce because a subsequent version of

14  those terms, the 2019 Terms of Service, corrected that omission.  Yet, the Maker Defendants never

15  introduced any evidence of the 2019 Terms of Service.  They concede Mr. Johnson never saw,

16  acknowledged, or agreed to the 2019 Terms of Service.  Despite these competing and

17  irreconcilable positions, the Maker Defendants ignore them altogether, stating that the presence of

18  the 2019 Terms of Service do nothing to elevate the novel and important qualities of this

19  compelling legal question.  Allowing the Maker Defendants to rely on the 2019 Terms of Service

20  to enforce the 2018 Terms of Service while simultaneously ignoring the significance of those latter

21  Terms of Service and how they materially differ from the 2018 Terms of Service simply highlights

22  the importance of the questions presented here.

23      But in either event, these are compelling and important questions of law that will affect

24

Plaintiff's Reply Brief in Support of Motion for Permission to Seek Interlocutory Review

countless litigants in the digital age.   With the proliferation of online agreements, especially agreements that are routinely updated or replaced, questions about the enforceability of those various versions of an agreement are bound to percolate through the country.   This appeal represents a rare opportunity to allow the Ninth Circuit to tackle these issues head on.

### c.   An immediate appeal represents the best likelihood of judicial economy.

As things now stand, this case is headed toward arbitration to answer at least the question of arbitrability.[5] The Defendants accurately capture the procedural flow of an interlocutory appeal but ignore the gravity and expense of the current procedure.   While the Defendants go out of their way to highlight the ramifications of a successful interlocutory appeal—noting that such a decision from the Ninth Circuit would "at best . . . return the case to this Court for further determination of Plaintiff's sophistication"[6]—they ignore the far more serious, time-consuming, and expensive implications for the parties if this case moves forward to arbitration.

In that case, the arbitrator will determine the question of arbitrability—a decision which itself, if stated in the affirmative, will not be subject to judicial review until final disposition.  Then, assuming the case moves forward in arbitration, the case will have to proceed to a final (and undoubtedly expensive) ruling before the threshold questions raised here may even be taken up to the Ninth Circuit. By that point, the litigants would have paid an enormous amount of money (at least for Mr. Johnson) in arbitrator, administrative, and attorney fees.   And then, even assuming the Ninth Circuit rules in Mr. Johnson's favor following arbitration, the relief granted would undoubtedly be a remand of the case to this Court for a ruling on Mr. Johnson's sophistication, followed by a *second* journey toward trial.

---

[5] Given the total variation between the 2018 and 2019 Terms, however, even the very basic questions regarding which arbitration rules (AAA or JAMS) and which jurisdiction's laws (Delaware or New York) will govern that arbitration are unsettled. *See* Plaintiff's Motion for Permission to Seek Interlocutory Review Pursuant to 28 U.S.C. § 1292(b), ECF No. 53 at 4, Exhibit 1.

[6] Opposition to Motion for Permission to Seek Interlocutory Review, ECF No. 55 at 12.

Plaintiff's Reply Brief in Support of Motion for Permission to Seek Interlocutory Review

1    Such a futile and costly exercise can and should be avoided. By allowing the Ninth Circuit

2  to take up these questions now and provide clarity in this case (not to mention countless others)

3  would materially advance the end of this litigation and avoid fruitless, protracted, and expensive

4  litigation.

5  **III.    Conclusion**

6    For the foregoing reasons, Mr. Johnson respectfully requests the Court give him permission

7  to seek interlocutory appellate review of the Order.

8  DATED:  December 4, 2020            **HARRIS BERNE CHRISTENSEN LLP**

9                                                  By:    */s/ Adam S. Heder*
                                                        Adam S. Heder, CSB #270946
10                                                       Of Attorneys for Plaintiff PETER JOHNSON,
                                                        individually and on behalf of all others similarly
11                                                      situated

12

13

14

15

16

17

18

19

20

21

22

23

24

Plaintiff's Reply Brief in Support of Motion for Permission to Seek Interlocutory Review