IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

PETER JOHNSON,

          Plaintiff,

    v.

MAKER ECOSYSTEM GROWTH
HOLDINGS, INC., NKA METRONYM,
INC., a foreign corporation; and MAKER
ECOSYSTEM GROWTH
FOUNDATION, a foreign corporation,

          Defendants.

Case No.  20-cv-02569-MMC

**ORDER GRANTING MOTION TO
DISMISS SECOND AMENDED CLASS
ACTION COMPLAINT**

Before the Court is defendant Maker Ecosystem Growth Holding, Inc., NKA

Metronym Inc. ("Metronym"), and Maker Ecosystem Growth Foundation's ("Maker

Growth") Motion, filed October 31, 2022, "to Dismiss Plaintiff's Second Amended Class

Action Complaint."  Plaintiff Peter Johnson has filed opposition, to which defendants have

replied.  Having read and considered the papers filed in support of and in opposition to

the motion, the Court rules as follows.[1]

## BACKGROUND

Defendants are "two affiliated foreign companies" that, according to plaintiff,

"collectively operate, run, and manage the Maker Ecosystem, a cryptocurrency platform"

(see Second Amended Class Action Complaint ("SAC") at 1, Dkt. No. 69), and, in the

course thereof, committed acts constituting "neglect and malfeasance" (see SAC ¶ 3).  In

particular, plaintiff alleges the following events occurred.

---

[1] By order filed February 7, 2023, the Court took the matter under submission.

United States District Court
Northern District of California

1     Defendants[2] "developed a digital currency" called DAI (see SAC ¶ 13) and, in

2     connection therewith, a "protocol and various applications necessary for minting,

3     collateralizing, and transacting the DAI[,]" namely, the "Maker Protocol" (see SAC ¶ 13).

4     The Maker Protocol "involves the collateralization of digital assets" to "create a stable

5     coin—DAI—which is a decentralized, unbiased, collateral-backed cryptocurrency soft-

6     pegged to the US Dollar." (See SAC ¶ 14 (internal quotations omitted).)  Once created,

7     DAI "is a store of value, a medium of exchange, a unit of account and a standard of

8     deferred payment" that is "meant to be exchanged digitally between peers in exchange

9     for other digital assets or services, just like US Dollars may be exchanged for goods and

10    services." (See SAC ¶ 15.)

11         Defendants also developed the Maker Decentralized Autonomous Organization

12    ("MakerDAO") which "enables holders of its governance token, MKR, to manage the

13    MakerDAO organization through a system of scientific governance involving Executive

14    Voting and Governance Polling to ensure its stability, transparency, and efficiency." (See

15    SAC ¶ 16 (internal quotation and alterations omitted).)  In other words, MakerDAO "sets

16    all of the rules and regulations" which rules and regulations are "'codified' as the Maker

17    Protocol." (See SAC at ¶ 18.)  The Maker Protocol, in turn, governs transactions in DAI.

18    (See SAC at ¶ 18.)

19         A "distinguishing characteristic" of DAI is that, pursuant to the Maker Protocol, "it

20    must be collateralized by another digital currency," primarily, Ethereum ("ETH"). (See

21    SAC ¶ 19.)  In practice, this means "an individual or entity wishing to transact in or

22    otherwise procure DAI" must take one of the following actions to obtain the currency: (1)

23    "trade ETH (or other Ethereum tokens) directly for DAI through Maker's 'Oasis' portal"; (2)

24    "purchase DAI with USD via cryptocurrency exchanges"; or, as relevant to the instant

25    action, (3) "create a collateralized debt position ('CDP'), thereby becoming a Vault

26    Holder." (See SAC ¶ 19.)  Where an individual seeks to obtain DAI through a CDP, they

27    _____

28         [2] Plaintiff, throughout the SAC, refers to both defendants collectively.

United States District Court
Northern District of California

may "purchase $10,000 of ETH from an exchange, deposit that ETH into a CDP contract as collateral," and then "borrow against their collateralized debt position by withdrawing DAI." (See SAC ¶ 19.)

The Maker Protocol requires Vault Holders to maintain a 150% collateral-to-debt ratio (the "Liquidation Ratio"). (See SAC ¶¶ 19-20.) When the value of a Vault Holder's collateral drops, leaving the Vault Holder's DAI undercollateralized under the Liquidation Ratio, a "liquidation event" is triggered (see SAC ¶ 22), whereby "the Vault Holder's collateral . . . is auctioned off to settle the debt with the Maker Protocol, with the balance of the ETH being returned to the Vault Holder" (see SAC ¶ 23). Defendants use a "price feed mechanism" called "oracles" to "monitor the price of ETH and thereby inform the Maker Protocol at large whether a given Vault Holder's DAI becomes undercollateralized." (See SAC ¶ 23 (internal quotation omitted).)

Plaintiff is an "early investor in ETH" who was "among a handful of early Maker adopters and evangelists" and a Vault Holder as of March 12, 2020, a date "now known as 'Black Thursday.'" (See SAC ¶¶ 1, 4.) According to plaintiff, "[t]he Maker Foundation and other third-party user interfaces repeatedly advertised and represented to Vault Holders users that, because their CDPs would be significantly overcollateralized, liquidation events would only result in a 13% liquidation penalty applied against the drawn DAI amount, after which the remaining collateral would be returned to the user" (see SAC ¶ 24 (emphasis omitted)), but, instead, Vault Holders, including plaintiff, "lost 100% of their collateral" when, on Black Thursday, the price of ETH dropped "significantly and rapidly" (see SAC ¶¶ 26, 33).

Plaintiff attributes his losses to two features of the Maker Protocol's liquidation process. First, plaintiff alleges, "the Maker Protocol's utilized oracles . . . failed to maintain accurate and updated prices, resulting in price reporting at levels much higher than the actual spot price of ETH." (See SAC ¶ 30.) Second, plaintiff alleges, defendants "severely limited who could participate" in the auction process, limiting approved bidders on the collateral in Vault Holders' CDPs to what are called "Keepers,"

i.e., "'persons' who run . . . liquidation-specific" algorithms ("bots") on the Maker Protocol. (See SAC ¶ 32.)  Consequently, on Black Thursday, "only four Keepers (running multiple bots) were active[,]" and, after one "ran into technical issues and wasn't able to operate" and "[t]he majority of the other[s] . . . quickly ran out of DAI liquidity and were frozen out of bidding for several hours," two Keeper bots "were able to successfully place numerous $0 bids on liquidated ETH collateral" and "won hundreds of auctions at no cost."  (See SAC ¶ 32.)  According to plaintiff, defendants "envisioned this very scenario" as early as 2017, but, "[d]espite that foresight . . . did little or nothing to sufficiently incentivize the creation and maintenance of adequate Keepers."  (See SAC ¶¶ 35-36.)

Based on the above, plaintiff asserts, on behalf of himself and a putative class, three Claims for Relief, titled, respectively, "Negligence," "Intentional Misrepresentation," and "Negligent Misrepresentation."

## DISCUSSION

By the instant motion, defendants seek an order dismissing the above-titled action in its entirety, on the asserted grounds that (1) Maker Growth is not a proper defendant because it has been dissolved, and therefore lacks capacity to be sued, and (2) plaintiff has failed to allege facts sufficient to support each of his claims for relief.  The Court first turns to plaintiff's claims against Maker Growth.

### A. Claims Against Maker Growth

Defendants seek dismissal of all claims against Maker Growth, a company "incorporated in the Cayman Islands" (see Decl. of Steven Becker in Supp. of Defs.' Mot. to Dismiss ("Becker Decl.") ¶ 3), on the ground it was dissolved prior to the filing of the SAC (see Becker Decl. ¶ 4).

"Capacity to sue or be sued is determined . . . for a corporation, by the law under which it was organized[.]"  See Fed. R. Civ. P. 17(b)(2).   Courts that have considered the question have found corporations organized under Cayman Islands law lack the capacity to be sued once it has been dissolved.  See, e.g., In re Bos. Generating LLC, 617 B.R. 442, 496 (Bankr. S.D.N.Y. 2020), aff'd sub nom. Holliday v. Credit Suisse Sec. (USA)

4

United States District Court
Northern District of California

1  LLC, 2021 WL 4150523 (S.D.N.Y. Sept. 13, 2021) (finding, where Cayman Islands

2  corporation had been dissolved, such entity, under Cayman Islands law, "cannot be

3  sued"); Dennis v. JPMorgan Chase & Co., 342 F. Supp. 3d 404, 409-10 (S.D.N.Y. 2018)

4  (applying Rule 17(b)(2) to "Cayman Islands exempted company"; finding, under Cayman

5  Islands law, "the dissolved company would have no capacity to sue").  Plaintiff cites no

6  authority to the contrary.  Rather, on the same date that he filed his Opposition, he filed a

7  motion seeking discovery for the purpose of determining whether Maker Growth has, in

8  fact, been dissolved.  (See Mot. for Expedited and Ltd. Initial Jurisdictional Discovery

9  ("Mot. for Discovery"), at 3:18-4:6, Dkt. No. 75.)  In response, defendants provided

10  additional evidence of Maker Growth's dissolution (see Decl. of Steven Becker in Opp. to

11  Plf.'s Mot. for Expedited and Ltd. Jurisdictional Discovery, Exs. A, B, Dkt. No. 76-1) and

12  plaintiff, thereafter, withdrew his request for discovery (see Withdrawal of Pltf.'s Mot. for

13  Expedited and Ltd. Jurisdictional Discovery, Dkt. No. 77).

14       Accordingly, there being no dispute as to its dissolution, all claims against Maker

15  Growth are subject to dismissal.

16  **B. Claims Against Metronym**

17       Defendants seek, pursuant to Rule 9(b) and Rule 12(b)(6) of the Federal Rules of

18  Civil Procedure, dismissal of all claims alleged against Metronym.  The Court first

19  addresses plaintiff's second and third claims for relief, namely, intentional

20  misrepresentation and negligent misrepresentation.

21            **1.  Intentional and Negligent Misrepresentation**

22       To state a cause of action for intentional misrepresentation, a plaintiff must allege:

23  "(a) misrepresentation (false representation, concealment, or nondisclosure); (b)

24  knowledge of falsity (or scienter); (c) intent to defraud, i.e., to induce reliance; (d)

25  justifiable reliance; and (e) resulting damage."  See Engalla v. Permanente Med. Group,

26  Inc., 15 Cal.4th 951, 974 (1997) (internal quotation and citation omitted).  The elements

27  of negligent misrepresentation are the same, with the exception that, rather than pleading

28  knowledge of falsity, the plaintiff must allege facts showing the defendant was "without

1    reasonable ground for believing [the misrepresentation] to be true."  See Hutchins v.

2    Nationstar Mortg. LLC, 2017 WL 2021363, at *3 (N.D. Cal. May 12, 2017).

3          Further, Rule 9(b) requires a plaintiff to "state with particularity the circumstances

4    constituting fraud[.]"  See Fed. R. Civ. P. 9(b).  In that regard, to plead a claim based on a

5    fraudulent representation, the plaintiff must allege "the who, what, when, where, and how

6    of the misconduct charged," see Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1106

7    (9th Cir. 2003) (internal quotation and citation omitted), as well as "evidentiary facts" that

8    establish the assertedly false or misleading statement was "untrue or misleading when

9    made," see Fecht v. Price Co., 70 F.3d 1078, 1082 (9th Cir. 1995) (internal quotation and

10   citation omitted).  Additionally, where, as here, the plaintiff has sued more than one

11   defendant, such plaintiff must allege facts to "inform each defendant separately of the

12   allegations surrounding his alleged participation in the fraud."  See Swartz v. KPMG LLP,

13   476 F.3d 756, 764-65 (9th Cir. 2007) (internal quotation and citation omitted).

14         In the instant case, there is no dispute that plaintiff's intentional misrepresentation

15   and negligent misrepresentation claims are subject to Rule 9(b)'s heightened pleading

16   requirement.  The question remaining is whether plaintiff has pleaded those claims with

17   the requisite particularity.  As set forth below, the Court finds he has not.

18         First, the SAC does not identify the specific content of any false or misleading

19   statement, see Swartz, 476 F.3d at 764 (holding Rule 9(b) "requires ... an account of the

20   time, place, and specific content of the false representations") (internal quotation and

21   citation omitted), and, instead, contains what are, at best, loosely paraphrased versions

22   of statements allegedly made (see SAC ¶¶ 2, 24, 33, 43, 73, 79), which do not suffice,

23   see Wenger v. Lumisys, Inc., 2 Fed. Supp. 2nd 1231, 1246-47 (N.D. Cal. 1998) (holding

24   allegations "paraphras[ing]" statements asserted to be fraudulent "lack the specificity

25   required by Rule 9(b)" (citing cases)).[3]  Likewise insufficient are plaintiff's conclusory

26

27         [3] Moreover, there should be no difficulty here in plaintiff's setting forth the precise
     language on which he relies, given his allegation that the misrepresentations were
28   contained in "materials presented to CDP creators."  (See SAC ¶ 43.)

United States District Court
Northern District of California

1    assertions that "[d]efendant's misrepresentations were knowingly false" and that

2    "[d]efendant was aware of the problems that existed within the Maker Protocol and the

3    potential for exploitation."  (See SAC ¶ 74); see Unico Am. Corp. v. Ins. Sys., Inc., 2016

4    WL 11506626, at *4 (C.D. Cal. May 2, 2016) (holding "vague allegations and conclusory

5    statements . . . do not give rise to an inference of fraudulent intent").

6            Additionally, plaintiff fails to inform each of the defendants of its participation in the

7    making of the alleged false statements.  Instead, plaintiff attributes all such

8    misstatements to "Defendant", a collective reference to Metronym and Maker Growth

9    (see SAC ¶ 7 (stating "[e]ach entity is collectively referred to herein as 'Defendant' or

10   'The Maker Foundation'")), and, indeed, attributes those statements to "third-party user

11   interfaces" as well (see SAC ¶¶ 24, 43).  Such group pleading is not permitted under Rule

12   9(b).  See Swartz, 476 F.3d at 764 (holding "Rule 9(b) does not allow a complaint to

13   merely lump multiple defendants together").[4]

14           Lastly, although plaintiff, in connection with his Opposition, has submitted a

15   declaration in which he further identifies the statements on which he seeks to base his

16   intentional and negligent misrepresentation claims (see Decl. of Peter Johnson in Supp.

17   of Pltf.'s Opp'n to Defs.' Mot. to Dismiss SAC ("Johnson Decl.") ¶¶ 5, 7, Dkt. No. 74-1), a

18   "complaint may not be amended by the briefs in opposition to a motion to dismiss[,]" see

19   Frenzel v. AliphCom, 76 F. Supp. 3d 999, 1009 (N.D. Cal. 2014) (internal quotation and

20   citation omitted).

21           Accordingly, the Court finds plaintiff's intentional and negligent misrepresentation

22   claims are subject to dismissal.

23           **2.  Negligence**

24           At the outset, the parties disagree as to whether Rule 9(b) applies to plaintiff's first

25   _____

26       [4] Although, as noted, plaintiff alleges the two defendants "collectively operate, run,
     and manage the Maker Ecosystem" (see SAC at 1), such conclusory allegation, absent

27   factual support, is unavailing, see Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (holding
     courts "are not bound to accept as true a legal conclusion couched as a factual

28   allegation") (internal quotation and citation omitted).

United States District Court
Northern District of California

claim for relief, negligence.

Where a plaintiff chooses not to allege "a unified course of fraudulent conduct," but rather to allege "some fraudulent and some non-fraudulent conduct," the Ninth Circuit has held that "only the allegations of fraud are subject to Rule 9(b)'s heightened pleading requirements." See Vess, 317 F.3d at 1104 (holding "[t]o require that non-fraud allegations be stated with particularity merely because they appear in a complaint alongside fraud averments ... would impose a burden on plaintiffs not contemplated by the notice pleading requirements of Rule 8(a)").

In the instant case, however, plaintiff's negligence claim begins by "realleg[ing] and incorporat[ing] [t]herein by reference each and every allegation contained in the preceding paragraphs" (see SAC ¶ 67), which paragraphs, as discussed above, contain allegations of false representations. Moreover, the claim then continues with an allegation that "[d]efendant has a duty to Vault Holders to manage the Maker Protocol and its platform both as it has advertised and also in a reasonable, prudent, non-negligent manner" (see SAC ¶ 68 (emphasis added)). Although the next paragraph reads, "[b]y failing to prevent and/or actively allowing the events of the $0 bid exploit to continue for 36 hours straight during Black Thursday, as outlined in Paragraphs 27-40 above, [d]efendant breached that duty" (see SAC ¶ 69), one of the cited paragraphs alleges that, "in contrast with [d]efendant's representations that in the event of liquidation there would be only a 13% penalty applied against the drawn DAI amount (with a return of all remaining collateral), Vault Holders lost 100% of their collateral" (see SAC ¶ 33 (emphasis added)). Under such circumstances, plaintiff has not clearly distinguished a negligence claim from a fraud claim. Consequently, Rule 9(b) applies, and, as set forth above, plaintiff has failed to meet its requirements.

Further, even assuming, arguendo, plaintiff has pleaded a separate claim for negligence, a question remains as to whether plaintiff has satisfied the requirements of Rule 8. See Vess, 317 F.3d at 1105 (holding "[a]llegations of non-fraudulent conduct need satisfy only the ordinary notice pleading standards of Rule 8(a)"). Defendants next

argue that the allegations in the SAC "fail to meet even the Rule 8 pleading standard" (see Defs.' Mot. to Dismiss Pltf.'s SAC ("Mot.") at 20:25-26, Dkt. No. 72), and, as set forth below, the Court agrees.

Although, unlike Rule 9(b), Rule 8 "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,'" see Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Fed. R. Civ. P. 8(a)(2)), "[t]o survive a motion to dismiss, a complaint must contain sufficient factual material, accepted as true, to 'state a claim to relief that is plausible on its face[,]'" see Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570). "Factual allegations must be enough to raise a right to relief above the speculative level," Twombly, 550 U.S. at 555, and, as noted, courts "are not bound to accept as true a legal conclusion couched as a factual allegation," see Iqbal, 556 U.S. at 678 (internal quotation and citation omitted).

To state a claim for negligence, a plaintiff must show: "(1) the defendant owed the plaintiff a duty of care, (2) the defendant breached that duty, and (3) the breach proximately caused the plaintiff's damages or injuries." See Lueras v. BAC Home Loans Servicing, LP, 221 Cal. App. 4th 49, 62 (Cal. Ct. App. 2013). "Whether a duty of care exists is a question of law to be determined on a case-by-case basis." See id.

Here, plaintiff, as noted, alleges "Defendant" has "a duty to Vault Holders to manage the Maker Protocol and its platform as it has advertised and also in a reasonable, prudent, non-negligent manner." (See SAC ¶ 68). Such allegation, however, fails to identify the source of the duty alleged, and, consequently, is insufficient. See Twombly, 550 U.S. at 555 (holding "plaintiff's obligation to provide the grounds of his entitlement to relief requires more than . . . a formulaic recitation of the elements of a cause of action") (internal quotation and citation omitted); Green Desert Oil Grp. v. BP W. Coast Prod., 2011 WL 5521005, at *5 (N.D. Cal. Nov. 14, 2011), aff'd sub nom. Green Desert Oil Grp. Inc. v. BP W. Coast Prod. LLC, 571 F. App'x 633 (9th Cir. 2014) (dismissing negligence claim for failure to identify source of duty of care; noting "[p]laintiffs can plead a duty only where there is (a) a duty imposed by law; (b) a duty

United States District Court
Northern District of California

9

1    assumed by the defendant, or (c) a duty arising out of a preexisting relationship").

2        Moreover, in alleging negligence on the part of "Defendant," without specifying

3    Metronym or Maker Growth, plaintiff, as discussed above, engages in impermissible

4    group pleading, which violates not only Rule 9(b), but also Rule 8(a). See Sollberger v.

5    Wachovia Sec., LLC, 2010 WL 2674456, at *4 (C.D. Cal. June 30, 2010) (noting "[o]ne

6    common theme of Rule 8(a) [and] Rule 9(b) . . . is that plaintiffs must give the defendants

7    a clear statement about what the defendants allegedly did wrong"; characterizing as

8    impermissible "shotgun pleading" plaintiff's use of "omnibus term '[d]efendants'

9    throughout a complaint").

10       Further, as defendants argue, plaintiff's negligence claim is, as currently pleaded,

11    barred by the economic loss doctrine.  (See Mot. at 20:22-21:1.)  Under California law,

12    the economic loss doctrine provides that "[i]n general, there is no recovery in tort for

13    negligently inflicted purely economic losses, meaning financial harm unaccompanied by

14    physical or property damage."  See Sheen v. Wells Fargo Bank, N.A., 12 Cal. 5th 905,

15    922 (2022) (internal quotation and citation omitted).  The rule "is particularly strong when

16    a party alleges commercial activities that negligently or inadvertently went awry," see

17    United Guar. Mortg. Indem. Co. v. Countrywide Fin. Corp., 660 F. Supp. 2d 1163, 1180

18    (C.D. Cal. 2009) (internal quotation, citation, and alteration omitted).  The economic loss

19    doctrine applies even where a plaintiff is not in privity of contract with the defendant.  See

20    Dubbs v. Glenmark Generics Ltd., 2014 WL 1878906, at *4 (C.D. Cal. May 9, 2014)

21    (noting "to the extent [p]laintiff argues that the economic loss rule does not apply when

22    a plaintiff lacks contractual privity with a defendant, that proposition is clearly belied by

23    California law").

24       Here, although there is no dispute that plaintiff seeks to recover solely for

25    economic losses (see SAC ¶ 4), plaintiff argues the doctrine is, for two reasons,

26    inapplicable to the instant case.  First, plaintiff contends the doctrine applies to cases that

27    implicate "two policy considerations," namely, when courts are "concerned about

28    imposing liability in an indeterminate amount for an indeterminate time to an

United States District Court
Northern District of California

United States District Court
Northern District of California

1   indeterminate class" (see Pltf.'s Opp'n to Defs.' Mot. to Dismiss ("Opp'n") at 19:18-20,

2   Dkt. 74 (internal quotation and citation omitted)), and when courts seek to "bar claims in

3   negligence for pure economic losses in deference to a contract between litigating parties"

4   (see Opp'n at 20:1-2 (internal quotation and citation omitted)).  Although plaintiff contends

5   his negligence claim "implicates neither policy concern" (see Opp'n at 20:5), such that

6   "the Court has no reason to even apply the [doctrine] . . . in the first place" (see Opp'n at

7   21:22-23), plaintiff cites no authority for the proposition that the analysis proceeds in such

8   fashion, see S. California Gas Leak Cases, 7 Cal. 5th 391, 400 (2019) (holding, under

9   California law, "liability in negligence for purely economic losses    . . . is the exception,

10  not the rule" (internal quotation and citation omitted)).

11          Second, plaintiff argues that even if the economic loss doctrine presumptively

12  applies to his negligence claim, he enjoys a "special relationship" with defendants,

13  thereby justifying an exception to the rule.  (See Opp'n at 22:17); see also S. California

14  Gas Leak Cases, 7 Cal. 5th at 400 (noting "[t]he primary exception to the general rule of

15  no-recovery for negligently inflicted purely economic losses is where the plaintiff and the

16  defendant have a special relationship") (internal quotation and citation omitted).  Whether

17  the special relationship exception applies, however, is a fact-intensive inquiry, see J'Aire

18  Corp. v. Gregory, 24 Cal.3d 799, 804 (1979) (identifying six factors[5] relevant to

19  determination as to whether special relationship exists), and plaintiff has not pleaded

20  facts sufficient to support a finding to that effect.

21          Accordingly, the Court finds plaintiff's negligence claim is subject to dismissal.

23                          ****************

25          [5] The six J'Aire factors are: "(1) the extent to which the transaction was intended to
26  affect the plaintiff, (2) the foreseeability of harm to the plaintiff, (3) the degree of certainty
    that the plaintiff suffered injury, (4) the closeness of the connection between the
    defendant's conduct and the injury suffered, (5) the moral blame attached to the
27  defendant's conduct and (6) the policy of preventing future harm."  See J'Aire, 24 Cal.3d
28  at 804.

11

**CONCLUSION**

For the reasons stated above, defendants' motion is hereby GRANTED.  As there is no showing the deficiencies noted above cannot be cured, leave to amend is hereby GRANTED, and plaintiff's Third Amended Complaint, if any, shall be filed no later than March 17, 2023.

In light thereof, the Further Case Management Conference currently scheduled for March 31, 2023 is hereby CONTINUED to April 28, 2023 at 10:30 a.m.

**IT IS SO ORDERED.**

Dated: February 22, 2023

MAXINE M. CHESNEY
United States District Judge

12