ADAM S. HEDER (CSB #270946)
adamh@jurislawyer.com
DANIEL J. NICHOLS (CSB #238367)
dan@jurislawyer.com
JurisLaw LLP
Three Centerpointe Drive
Suite 160
Lake Oswego, OR 97035
Telephone:   (503) 968-1475
Facsimile:    (503) 968-2003

*Attorney for Plaintiff*
*Additional counsel on next page*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| PETER JOHNSON, individually and on behalf of all other similarly situated, | Case No.:  3:20-cv-02569-MMC |
| Plaintiff, | Judge:  Hon. Maxine M. Chesney |
| v. | **MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT** |
| MAKER ECOSYSTEM GROWTH HOLDINGS, INC., NKA METRONYM, INC., a foreign corporation, | Date:          February 9, 2024 |
| Defendant. | Time:          9:00 AM |
| | Courtroom:  7 |
| | Judge:          Hon. Maxine M. Chesney |

1

## TABLE OF CONTENTS

2  NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION
3  SETTLEMENT...................................................................................................1
.
4  MEMORANDUM OF POINTS AND AUTHORITIES...........................................1

STATEMENT OF THE ISSUES TO BE DECIDED..............................................1
5
STATEMENT OF RELEVANT FACTS...............................................................1
6
7       I.      Procedural Background...........................................................................1

8       II.     Class Notice...........................................................................................3

9               1.      Implementation of Notice Plan..................................................3
10
                2.      Administration Website and Hotline..........................................5
11
                3.      Claims Administration................................................................5
12
                4.      Distribution after Final Approval and Allocation........................6
13
   LEGAL STANDARD AND ARGUMENT.............................................................7
14
        I.      Plaintiff and His Counsel Have Adequately Represented the Class..............9
15
        II.     The Proposal was Negotiated at Arm's Length.......................................9
16
        III.    The Overall Strength of the Plaintiffs' Case; the Risk, Expense,
                Complexity, And Likely Duration of Further Litigation, the Risk
17              of Maintaining Class Action Status Throughout the Trial; and the
                Amount Offered in Settlement, all Weigh in Favor of Approval.................10
18
        IV.     The Extent of Discovery Completed and the State of the Proceedings
19              Does Not Impact the Analysis................................................................11

20      V.      The experience and view of Counsel Support Approval..........................11

21      VI.     The Presence of a Governmental Participant is Irrelevant.......................12

22      VII.    The Reaction of Class Members to the Class Settlement Again
                Favors Approval.....................................................................................12
23
        VIII.   The Remaining Rules 23(e)(2) Factors Are Also Met.............................13
24
                a.      The Proposed Method for Distributing Relief is Effective..............13
25
                b.      The Request for Attorney Fees and Incentive Award is
26                      Reasonable and is not Opposed.................................................14

27              c.      The Parties have No Other Agreements Besides Opt-outs.............15

28              d.      The Proposed Plan Treats Class Members Equitably....................16

                e.      Notice Satisfies Due Process....................................................16

i

f.      The Plan of Allocation is Fair and Appropriate……………………..17

CONCLUSION…………………………………………………………………...18

## <u>TABLE OF AUTHORITIES</u>

### CASES

*Accord Tait v. BSH Home Appliances Corp.*, No. SACV 10-0711-DOC (Anx), 2015 U.S. Dist. LEXIS 98546, *18 (C.D. Cal. July 27, 2015) ............................................................. 13

*Benipayo v. Volkswagon Grp. of Am. Inc.,* 975 F.3d [77]0 (9th Cir. 2020) ......................................... 16

*Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1128 (9th Cir. 2017) ...................... 17

*Chen v. Chase Bank USA, N.A.*, 2020 U.S. Dist. LEXIS 110755 * 32-32 (N.D. Cal. June 23, 2020) .................................................................................................................................. 14

*Chun-Hoon v. McKee Foods Corp.,* 716 F. Supp. 2d 848, 854 (N.D. Cal. 2010) ........................... 14

*Churchill Vill., LLC v. GE*, 361 F.3d 566, 575 (9th Circ. 2004) ........................................... 8

*City Partnership Co. v. Atlantic Acquisition Ltd. P'ship,* 100 F.3d 1041, 1043 (1st Cir.1996) ....... 10

*Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992) ............................................. 7

*Clay v. Cytosport, Inc.*, Case No.: 3:15-cv-00165-L-DHB, 2020 U.S. Dist. LEXIS 201919, *7-8 (S.D. Cal. Oct. 29, 2020) ......................................................................................... 13

*ConAgra Brands, Inc. v. Briseno*, —— U.S. ——, 138 S.Ct. 313, 199 L.Ed.2d 206 (2017) ........... 17

*Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980), *aff'd*, 661 F.2d 939 (9th Cir. 1981) .................................................................................................................... 11

*Garcia v. Gordon Trucking, Inc.*, 2012 U.S. Dist. LEXIS 160052 *31 (E.D. Cal. Oct. 29, 2012) ................................................................................................................................. 15

*Hanlon v. Chrysler Corp.* 150 F.3d 1011, 1025 (9th Cir. 1998) ....................................... 16

*In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 332 (N.D. Cal. 2018)............................. 17

*In re Corrugated Container Antitrust Litigation*, 643 F.2d 195, 211 (5th Cir.1981) ..................... 11

*In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988, 993 [(]9th Cir. 2010) .......................... 14

*In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995)........................................... 11

*In re Zynga Inc. Sec. Litig.*, No. 12-cv-04007-JSC, 2015 WL 6471171, at *10 (N.D. Cal. Oct. 27, 2015) ........................................................................................................... 16

*Johnson v. MGM Studios*, Case No. C17-541RSM, 2018 U.S. Dist. LEXIS 177824, *10-11(W.D. Wash. Oct. 16, 2018) ........................................................................................ 13

*Kamakana v. City & Cty. Of Honolulu*, 447 F.3d 1172, 1178 [(]9th Cir. 2006)................................ 16

*Keil v. Lopez*, 862 F.3d 685, 697 (8th Cir. 2017) ............................................................. 13

iii

*Lilly v. Jamba Juice Co.*, 308 F.R.D. 231, 239 (N.D. Cal. 2014) ....................................................17

*Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998)..........................................11

*Long, et al. v. Safeway, Inc.* (Case No. 19CV45421) ...................................................................12

*Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004) ..........................................................................................................................................10

*New York v. Reebok Int'l Ltd.,* 903 F.Supp. 532, 535 (S.D.N.Y.1995), *aff'd,* 96 F.3d 44 (2d Cir.1996) .....................................................................................................................................10

*Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811 (1985) .........................................................17

*Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009) ...................................................10

*Simonin v. WinCo Foods, LLC (*Case No. 3:19-cv-02094-AR).....................................................12

*Solano v. The Kroger Co.* (Case No. 3:18-cv-01488-AR)...........................................................12

*Spicer v. Chi. Bd. of Options Exchange, Inc*., 844 F.Supp. 1226, 1267-68 (N.D. Ill. 1993)............15

*Vandervort v. RFC Joint Venture, et al.* (Case No. 23CV30386) ...................................................12

*Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002)...........................................14

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) ...............................................................16

**Statutes**

Federal Rules of Civil Procedure 23(e) ..................................................................................7, 9

Federal Rules of Civil Procedure 23(e)(2) ...............................................................................7, 8

Federal Rules of Civil Procedure 23(e)(3) ..................................................................................8

Federal Rules of Civil Procedure 23(a) and (b)(3)..........................................................................8

Federal Rules of Civil Procedure 23(h)......................................................................................14

Federal Rules of Civil Procedure 23(e)(2)(C)(iv) ......................................................................16

Federal Rules of Civil Procedure 23(c) and (e) ...........................................................................16

**NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT**

TO ALL PARTIES AND THEIR RESPECTIVE COUNSEL OF RECORD:

PLEASE TAKE NOTICE that at 9:00 a.m. on February 9, 2024, in the courtroom of the Honorable Maxine M. Chesney, located at 450 Golden Gate Avenue, Courtroom 7, 19th Floor, San Francisco, California 94102, Plaintiff Peter Johnson will and hereby does move this Court for an order approving the Motion for Final Approval of Class Action Settlement.

Pursuant to FRCP 23(e), Plaintiff Peter Johnson and his counsel hereby move the Court for final approval of the preliminarily certified and approved class settlement, pursuant to and consistent with the terms of the parties' Stipulation and Agreement of Settlement (the "Settlement"), previously filed with the Court at ECF No. 91-6, as well as approval of Counsel's previously filed Motion for Attorney Fees and Class Representative Service Award, at ECF No. 102.

In support of this motion, plaintiff submits the Memorandum immediately below and the concurrently filed declarations of Adam Heder of JurisLaw, LLP ("Class Counsel"), and Julie Green, representative of CPT Group, Inc. ("CPT Group")—the class action administrator—as well as the documents attached to those declarations.

For the reasons set forth below, Plaintiff and his counsel respectfully request the Court grant final approval of the settlement of this matter.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**STATEMENT OF THE ISSUES TO BE DECIDED**

Is the proposed final class settlement in this case fundamentally fair, adequate, and reasonable?

**STATEMENT OF RELEVANT FACTS**

**I.    Procedural Background**

This action was brought on behalf of all persons or entities who had a Collateralized Debt Position, or Vault, on the Maker Protocol that were forced to liquidate their Ethereum ("ETH") on March 12 or 13, 2020 and received zero compensation for that liquidated ETH as part of any related auction.

Plaintiff filed his initial complaint on April 14, 2020, against defendants Maker Ecosystem Growth Holdings, Inc. (nka Metronym and hereinafter referred to as "Defendant" or "Metronym"), Maker Ecosystem Growth Foundation, and the Dai Foundation.  (ECF No. 1.)  On May 8, 2020, Plaintiff filed the First Amended Class Action Complaint against Metronym, Maker Ecosystem Growth Foundation, and Dai Foundation.  The complaint asserted claims for intentional misrepresentation, negligent misrepresentation, and negligence.  (ECF No. 9.)

On July 15, 2020, Defendant moved the Court to compel arbitration.  (EC No. 41.) The Court granted that motion on September 25, 2020.  (ECF No. 48.)  On November 5, 2020, Plaintiff dismissed without prejudice his claims as to the Dai Foundation.  (ECF No. 49.)  Thereafter, the parties litigated the arbitrability of the matters before an arbitration panel.  On May 18, 2022, the arbitration panel ruled the issues non-arbitrable and referred the matter back to this Court, which reopened the case on July 1, 2022.  (ECF No. 64.) On September 8, 2022, Plaintiff filed the Second Amended Class Action Complaint against Metronym and Maker Ecosystem Growth Foundation.  (ECF No. 69.)   On October 31, 2022, defendants Metronym and Maker Ecosystem Growth Foundation moved to dismiss the Second Amended Class Action Complaint.  (ECF No. 72.)  On February 22, 2023, the Court granted Metronym and Maker Ecosystem Growth Foundation's motion to dismiss without prejudice, granting leave to amend.  (ECF No. 82.) On March 31, 2023, Plaintiff filed the Third Amended Class Action Complaint against Metronym and removed Defendant Maker Ecosystem Growth Foundation from the matter.  (ECF No. 86.)

On April 20, 2023, the parties and their counsel participated in a mediation with Robert A. Meyer, Esq. of JAMS ADR.  The parties reached agreement with the assistance of the mediator, and the parties thereafter executed a term sheet memorializing their agreement, which included, among other things, the parties' agreement to resolve the matter in return for a settlement payment of $1,160,000.00 for the benefit of the qualifying class members (the "Class" and/or "Class Members"), subject to the negotiation of the terms of the Settlement and approval by the Court.

The terms of stipulation and agreement of settlement are set forth more fully in the Settlement, on file with the Court.  (ECF No. 91-6.)

Thereafter, Plaintiff filed an Unopposed Motion for Preliminary Approval of Class Action Settlement.  (ECF No. 98.)  The parties appeared before the Court on August 11, 2023.  At the hearing, the Court reviewed the moving papers and went through, with the parties, each factor to be evaluated in approving a class action settlement.  On August 18, 2023, the Court issued its Order Preliminarily Approving Settlement and Providing for Notice.  (ECF No. 99.)  On September 8, 2023, Plaintiff's Counsel filed a Motion for Attorney Fees and Incentive Award for the Lead Plaintiff.  (ECF No. 102.)

## II.    Class Notice

### 1.    Implementation of Notice Plan

Per the Court's Order (ECF No. 99), the parties sought and were approved to utilize the services of CPT Group, a longtime, highly respected class action administration servicer.  Ms. Julie Green of CPT Group, whose declaration is filed concurrent herewith, led a team of individuals tasked with delivering notice to and processing claims prepared by potential class members.[1]

Users of the Maker Protocol each create a virtual "wallet" through which they transacted or collateralized their DAI.  The users' actual identity is unknown.  Notwithstanding that lack of personally identifying information, a feature of the Maker Protocol is that each wallet which interacted with the platform is known and knowable via a digital ledger. Thus, the parties can identify each wallet—and thus, each user—who qualified as a Class Member (those who were forced to liquidate their ETH on March 12 or 13, 2020 in a zero-bid auction) with exact precision, even if their identity remains unknown.  Accordingly, and in contrast with a more typical consumer class action settlement where the parties must go to various lengths in hopes of identifying or capturing all potential Class Members, the digital ledger in this case made possible precise identification of each potential and actual Class Member.

---

[1] Declaration of Julie Green ("Green Decl.") ¶ 5.

And so, on August 23, 2023, in advance of issuing notice, Counsel for Defendant provided Plaintiff's counsel a data file containing the identifiable blockchain addresses (or wallets) of any Vaults on the Maker Protocol that were forced to liquidate their ETH on March 12 or 13, 2020, and received zero compensation as part of any related auction.[2] In total, the parties identified 329 such persons or entities.[3] A copy of the chart identifying these 329 different wallets is included in the Declaration of Ms. Green.[4]

Following entry of the Order Granting Preliminary Approval, CPT Group established an interest-bearing escrow account to receive the settlement funds. In accordance with Section 2.1 of the Settlement and the Preliminary Approval Order, on September 20, 2023, Defendant funded the settlement funds in the amount of $1,159,966.09 to the escrow account via wire transfer.[5]

In late August 2023—following the Court's approval of CPT Group as the settlement administrator—Class Counsel sent to CPT Group the approved forms of Notice, together with the list of Class Members (provided by Defendant), which included those Vaults and Vault-holders that were affected by at least one zero-bid auction (as that term was defined in the Settlement) on March 12 or 13, 2020.

On September 8, 2023, CPT Group disseminated the Short Form Notice via the Maker Protocol blockchain to the 329 Class Members who had a valid blockchain address.[6] And on the same day, CPT Group posted the Short Form Notice to the MakerDAO Forum (www.forum.makerdao.com).[7]

---

[2] Green Decl. ¶ 6; Declaration of Adam Heder ("Heder Decl.") ¶ 7.
[3] Green Decl. ¶ 6, Ex. A.
[4] Green Decl. ¶ 6, Ex. A.
[5] Green Decl. ¶ 7.
[6] Green Decl. ¶ 12.
[7] Green Decl. ¶ 13.

MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT          Case No.: 3:20-cv-02569-MMC

On November 2, 2023, CPT Group sent the Short Form Notice a second time via the Maker Protocol blockchain.[8]  And on November 7, 2023, CPT Group re-posted the Short Form Notice to the MakerDAO Forum (www.forum.makerdao.com).[9]

On November 17, 2023, at Counsel's request, CPT Group sent the Short Form Notice a third time via the Maker Protocol blockchain.[10]

### 2.    Administration Website and Hotline

In addition, with input from the Parties, CPT Group designed the Settlement Website (www.MakerProtocolSettlement.com), which went live on September 8, 2023. The Settlement Website made available copies of the Order Preliminarily Approving Settlement, Settlement, the Declaration of Julie N. Green, Long Form Notice, Short Form Notice, and Claim Form. Additionally, the Settlement Website featured a timeline outlining relevant dates and deadlines related to the Settlement. The Settlement Website also allowed Class Members to electronically submit a claim through the website.[11]

CPT established a case-specific 24-hour toll-free telephone number (1-888-510-2066), which went live on September 8, 2023. Calls received during business hours (9:00 a.m. to 5:30 p.m. PT Monday through Friday) were prompted through the interactive voice recognition ("IVR") FAQs and given an opportunity to speak with a live representative. Calls received outside business hours were provided the FAQs and were given the option of leaving a voicemail.[12]

CPT also established and has maintained a dedicated email address (MakerProtocolSettlement@cptgroup.com) since September 8, 2023, which Class Members can use to communicate with CPT regarding the case.[13]

### 3.    Claims Administration

As of the filing of this motion, CPT Group had received a total of 22 Claim Forms; eleven of the 22 Claim Forms received have been determined to be a valid claim for payment.  No claims have been submitted after the deadline.  Of the 22 Claim Forms received, eleven were determined to be

---

[8] Green Decl. ¶ 14.
[9] Green Decl. ¶ 15.
[10] Green Decl. ¶ 16.
[11] Green Decl. ¶ 9.
[12] Green Decl. ¶ 10.
[13] Green Decl. ¶ 11.

MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT          Case No.:  3:20-cv-02569-MMC

1    invalid of which four were found to be duplicative of other claims, and seven were deficient and their

2    deadline to cure has expired. CPT addressed deficient claims by sending a letter (by email) that

3    detailed how the claim form was deficient and what was necessary to cure it. Claimants had 14 days

4    from the date the letter was issued to cure the deficiency.[14]

5         As of the filing of this motion, CPT had received no exclusion or opt out requests and no

6    objections.[15]

7         While the total of valid claims may appear, at first blush, to be low—only 3.34% of the 329

8    wallets identified by the parties—the total claimed accounts for more than a third of the total ETH

9    collateralizing the Vaults at issue in the lawsuit.  Not all Class Members lost the same amount of

10   money in the Black Thursday crash.  Some lost a comparatively negligible amount, and some lost a

11   large number compared to other members of their Class cohort.  The eleven valid claims – consisting

12   of nine separate persons (eight individuals and one corporation) – had Vaults collateralized by a total

13   of 41,583.33 ETH. That number of at-issue ETH represents *34.2%* of the 120,561.51 total ETH

14   collateralizing Vaults that had zero bid auctions on Black Thursday.[16]  Moreover, it should be noted

15   that the number of wallets does not necessarily correlate directly to the number of Class Members –

16   i.e., a Class Member could own multiple wallet addresses.  For these reasons, the responsive rate of

17   3.34% for the 329 wallets at issue is not a true reflection of the substantial responses by concerned

18   Class Members.

19              4.    <u>Distribution After Final Approval and Allocation</u>

20        If the Court grants final approval of the Settlement, CPT Group will manage further steps of

21   settlement administration in accordance with the Settlement and the Court's order.

22        CPT's total fees for the notice and settlement administration of this matter is and will remain

23   $24,000.00.[17]  This total includes all services provided to date as described in this declaration, as

24   well as completing payment to the valid claimants and other tasks as required by the Settlement to

25   complete administration of the settlement.

26   _____

27   [14] Green Decl. ¶ 21.
     [15] Green Decl. ¶¶ 17-23.

28   [16] Heder Decl. ¶ 6.
     [17] Green Decl. ¶ 24.

As for allocation of the settlement funds, as described in the Motion for Preliminary approval, each valid claim is entitled to its proportionate share of the Common Fund, not to exceed its claimed losses, as calculated by that member's Ethereum lost on March 12 or 13, 2020 over the total amount of Ethereum claimed by other Class Members.

To illustrate:  As of the filing of this motion, there are $24,000.00 in class administration costs; Plaintiff's Counsel has requested a 30% attorney fee award or $348,000.00; Plaintiff's counsel is requesting $17,911.52 in out-of-pocket costs; and Plaintiff has requested a $25,000.00 incentive award.  Should the Court approve these requests, then approximately $745,088.48 remains to be distributed to the class.  There were eleven valid claims in this matter.  Each claim was linked to a specific amount of lost ETH.  For example, one claim was for 1,713.70 ETH.  The total amount of ETH claimed was 41,583.33.  Thus, the claim for 1,713.70 ETH is divided against the total amount claimed, 41,583.33, which equals 4.1%.  That percentage is applied against the funds to be distributed, $745,088.48, which equals = 4.1% of $745,088.48 = $30,548.63

Notably, this plan of allocation will result in 100% of the funds being distributed to Class Members who made valid claims after reasonable notice, and it will eliminate any need to consider cy pres or any reversionary interest.  Any unclaimed ETH is immediately accounted for by a calculation method that is limited to those Class Members that timely and appropriately claimed a share of the Common Fund.  To the extent any of the 12 claims fail to collect their share, that amount will be distributed to the remaining Class Members using the same formula.

## LEGAL STANDARD AND ARGUMENT

The Ninth Circuit has declared a strong judicial policy for the settlement of class actions. *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992). Federal Rule of Civil Procedure 23(e) requires judicial approval for a settlement of claims brought as a class action.  Fed. R. Civ. P. 23(e) ("The claims . . . of a certified class – or a class proposed to be certified for purposes of settlement – may be settled . . . only with the court's approval.")  Rule 23(e)(2) provides:

7

(2)  **Approval of the Proposal**.  If the proposal would bind class members, the court may approve it only after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether:

> (A)  the class representatives and class counsel have adequately represented the class;
>
> (B)  the proposal was negotiated at arm's length;
>
> (C)  the relief provided for the class is adequate, taking into account:
>
>> (i)  the costs, risks, and delay of trial and appeal;
>>
>> (ii)  the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>>
>> (iii)  the terms of any proposed award of attorney's fees, including timing of payment; and
>>
>> (iv)  any agreement required to be identified under Rule 23(e)(3); and
>
> (D)  the proposal treats class members equitably relative to each other.

In evaluating whether settlements are fair, reasonable, and adequate, courts in the Ninth Circuit consider the additional following factors, certain of which overlap with Rule 23(e)(2):

(1) the strength of the plaintiffs' case;

(2) the risk, expense, complexity, and likely duration of further litigation;

(3) the risk of maintaining class action status throughout the trial;

(4) the amount offered in settlement;

(5) the extent of discovery completed and the stage of the proceedings;

(6) the experience and views of counsel;

(7) the presence of a governmental participant; and

(8) the reaction of class members to the proposed settlement. *Churchill Vill., LLC v. GE*, 361 F.3d 566, 575 (9th Circ. 2004).

The Court, of course, already granted preliminary certification under FRCP 23(a) and (b)(3) and preliminary approval of the settlement. The reaction to the Settlement has been positive as no Class Members, or any other party, have filed any objections to the proposed settlement and no potential Class Member chose to opt out or otherwise exclude themselves from the Settlement.  Thus, nothing has changed to affect the propriety of granting certification of the Class for settlement purposes or of finally approving the settlement as fair, reasonable, and adequate under FRCP 23(e). The positive reaction from the Class Members through valid claims and lack of any objections to the Settlement has only strengthened the Court's preliminary approval.

Notwithstanding, Plaintiff addresses each of the factors here and why they weigh in favor of settlement approval.

## I.    Plaintiff and his counsel have adequately represented the Class.

Plaintiff and his counsel filed their claims in 2020.  By the time settlement is approved, they will have been in litigation nearly four years.  The Court initially granted Defendants' motion to compel arbitration.  But Plaintiff persisted and prevailed in moving the arbitration panel to send the matter back to this Court.  And though Defendant's subsequent motion to dismiss was granted, it was granted with leave to amend, which Plaintiff did.  That is to say, in four years, the claims still survive.  No other attorney or plaintiff came forward to represent the matter.  And, ultimately, the parties engaged a highly respected mediator who brokered an arms' length settlement that not a single Class Member has objected to.

## II.    The proposal was negotiated at arm's length.

The proposed Settlement follows intensive litigation over the course of several years and arm's-length negotiations, including weeks of negotiation between the parties and a day-long mediation session with experienced mediator Robert Meyer.  The negotiations were at all times adversarial and at arm's-length, and produced a result that is in the Class's best interest. And the Ninth Circuit "put[s] a good deal of stock in the product of an arms-length, non-collusive, negotiated

resolution." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009); *see also Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004) (settlements following "genuine arms-length negotiation" are "presumed fair") (citing *City Partnership Co. v. Atlantic Acquisition Ltd. P'ship,* 100 F.3d 1041, 1043 (1st Cir.1996); *New York v. Reebok Int'l Ltd.,* 903 F.Supp. 532, 535 (S.D.N.Y.1995), *aff'd,* 96 F.3d 44 (2d Cir.1996)).

## III.    The overall strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation, the risk of maintaining class action status throughout the trial; and the amount offered in settlement, all weigh in favor of approval.

Prosecution of this matter entailed considerable risk.  As an initial point, this case has been in litigation for nearly four years and has not yet passed the pleading stage.  Defendants first moved the Court to compel arbitration, which the Court granted.  Though Plaintiff ultimately prevailed in having the case sent back to this Court, Defendant then prevailed in having the entire case dismissed without prejudice.  Though Plaintiff filed a Third Amended Complaint, there was certainly no guarantee it would survive an additional motion to dismiss, particularly where certain challenges – i.e., the economic loss doctrine – are purely legal.  Even if the case had survived past the pleadings, class certification presented a whole different set of challenges, primarily because the potential Class Members each faced potentially different defenses based on what form of user agreement they did or did not sign.  Additionally, negligent misrepresentation – or fraud – claims always face obstacles because of their scienter requirement.

While the Settlement represents roughly 14% of what had been sought in the operative complaint, the Court's recent grant of a motion to dismiss underscores the risks faced by Class Members in this litigation.  In addition, the Court should consider: (1) the potential procedural difficulties presented by class certification where Class Members may each be subject to discovery requests and deposition to determine whether and to what extent each Class Member relied on representations made by Defendant, and (2) the prospect of years-long trial and appellate proceedings.  All these factors combine to make the Settlement more palatable than risking everything in a litigation which could be lost altogether.

**IV.     The extent of discovery completed and the stage of the proceedings does not impact the analysis.**

The parties did not engage in formal discovery.  And the case is still at the pleadings stage. Notwithstanding, as the parties and the Court discussed at the prior hearing, this fact does not weigh against settlement approval.  The primary facts of the case are public knowledge, and as discussed above, the availability of a publicly accessible, digital ledger makes it possible to identify with precision the Class Members and their respective harms.  Additionally, Plaintiff filed a detailed complaint with references to corporate meetings and discussions and press releases – all of which were publicly available.  Defendant's primary defenses were and are in fact legal arguments – such as the economic loss doctrine – that did not require additional factual discovery.

As the Ninth Circuit has long held, "in the context of class action settlements, formal discovery is not a necessary ticket to the bargaining table where the parties have sufficient information to make an informed decision about settlement." *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998) (cleaned up). In particular, the district court and plaintiffs may rely on discovery developed in prior or related proceedings. *Id.* (citing *In re Corrugated Container Antitrust Litigation*, 643 F.2d 195, 211 (5th Cir.1981) (noting that "notwithstanding the status of discovery, plaintiffs' negotiators had access to a plethora of information regarding the facts of their case"). Here, Plaintiff and his counsel had access to substantial publicly available information regarding the facts of this case. The operative Complaint was detailed, supported by citation to publicly available materials and attached exhibits, and the parties vigorously explored those pleaded facts in proceedings before this Court, before a deeply experienced arbitration panel, by and between the other parties in their own negotiations, and then again with their mediator, Robert Meyer.

**V.     The experience and views of counsel support approval.**

The opinion of experienced counsel supporting the settlement is "entitled to considerable weight."  *See, e.g., Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980), *aff'd*, 661 F.2d 939 (9th Cir. 1981).  Indeed, "[p]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995).

11

Plaintiff's counsel, JurisLaw, LLP, has considerable experience in litigating class action lawsuits.  Mr. Heder previously worked with the law firm Paul Hastings LLP, where he acted as defense counsel on securities class actions.  Co-counsel Dan Nichols' experience is extensive.  He is licensed in California, Oregon, and Washington and throughout his 18 years of practice, in state and federal courts, Mr. Nichols has litigated class action lawsuits for both plaintiffs and defendants.  For example, he served as counsel for debt collectors in consumer class actions (Washington), large energy and chemical companies in environmental class action and mass tort cases (California), and healthcare insurers and healthcare providers in antitrust class actions (California).  More recently, he represented or currently represents plaintiffs as class counsel (or proposed class counsel) in the following actions (Oregon):

- *Long, et al. v. Safeway, Inc.* (Case No. 19CV45421) (settled and approved as class counsel)
- *Simonin v. WinCo Foods, LLC (*Case No. 3:19-cv-02094-AR)
- *Vandervort v. RFC Joint Venture, et al.* (Case No. 23CV30386)
- *Solano v. The Kroger Co.* (Case No. 3:18-cv-01488-AR)

Additionally, no other counsel filed claims in this matter or requested to be lead counsel.[18]

## VI.     The presence of a governmental participant is irrelevant.

This factor is not relevant in this matter.

## VII.     The reaction of Class Members to the class settlement again favors approval.

Class members representing roughly 34% of all ETH collateralizing Vaults that suffered zero bid auctions on March 12 or 13, 2020 have submitted claims in this settlement.  After reasonable notice, not a single Class Member objected.  Not a single Class Member opted out.  And not a single Class Member raised any dispute with the process.

As described above, CPT Group provided exhaustive notice through all known methods of reaching the potential Class.  It established a hotline and a website.  CPT posted information on the relevant online forum and sent out notices to each vault holder's "digital wallet."  Indeed, at the parties' request, CPT Group provided an additional notice – one more above and beyond what the Court required.

---

[18] Heder Decl. ¶¶ 8-11.

MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT            Case No.:  3:20-cv-02569-MMC

A wallet participation rate of less than 4% may appear low, but as noted, the amount of ETH collateralizing the Vaults of Class Members who submitted a claim represents over a third of all ETH in Vaults with zero bid auctions during Black Thursday.  And because the number of wallets does not necessarily correlate directly with the number of Class Members, and because each wallet had widely varied amounts of ETH, 34% is the more effective participation rate to evaluate.  In any event, courts throughout the country, including within this Circuit, have expressly ruled that participation rates under 5% are not unusual and may still be appropriate.  *Keil v. Lopez*, 862 F.3d 685, 697 (8th Cir. 2017) ("Although Lopez points out that the low claims rate also means that only 3 percent of the class will receive this benefit, we note that a claim rate as low as 3 percent is hardly unusual in consumer class actions and does not suggest unfairness."  *Accord Tait v. BSH Home Appliances Corp.*, No. SACV 10-0711-DOC (Anx), 2015 U.S. Dist. LEXIS 98546, *18 (C.D. Cal. July 27, 2015); *Clay v. Cytosport, Inc.*, Case No.: 3:15-cv-00165-L-DHB, 2020 U.S. Dist. LEXIS 201919, *7-8 (S.D. Cal. Oct. 29, 2020); *Johnson v. MGM Studios*, Case No. C17-541RSM, 2018 U.S. Dist. LEXIS 177824, *10-11(W.D. Wash. Oct. 16, 2018).

## VIII.    The Remaining Rule 23 (e)(2) Factors Are Also Met

### a.    The proposed method for distributing relief is effective.

The Class Members here are the persons and entities that were forced to liquidate their ETH on March 12 or 13, 2020 and received zero compensation at any related auction.  Though certain of these individuals publicly revealed themselves on various chat groups and forums, the Class Members are known only through their digital "wallet" through which they collateralized and transacted their DAI.  Fortunately, one of the features of the Maker Protocol is the digital ledger through which each of these wallets can be precisely identified.  And so, Defendant was able to provide a list of each wallet that was forced to liquidate on March 12 or 13, 2020 and received zero compensation at auction.  More importantly, using that wallet identification, CPT Group was able, with Defendant's assistance, to send an electronic communication, akin to an email, to each Class Member.  The Court instructed Plaintiff's class administrator to provide this notice twice.  To be

1  safe, Plaintiff instructed CPT Group to provide it three times.  On top of that, CPT Group established

2  a website and a hotline.  And they posted links to the notice in a forum for the crypto platform.

3      And as to distribution, each claimant has provided the means by which they prefer to receive

4  monies, either by check or electronic transfer.  Execution of the plan presents no meaningful

5  logistical challenge.[19]

> **b.  The request for attorney fees and incentive award is reasonable and is not opposed.**

7      In summary of the Motion for Attorney Fees (ECF No. 102, which is incorporated herein by

8  reference), Class Counsel has requested 30% of the Settlement Fund.  In the Ninth Circuit, if a district

10  court employs the percentage method, "25% of the common fund [is the] benchmark award for

11  attorney fees," *id.*, with "20-30% as the usual range." *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043,

12  1047 (9th Cir. 2002). And "[i]n many cases, the benchmark is closer to 30%." *Id.*

13      Here, whether under the lodestar method or the percentage method, Class Counsel's

14  requested fee of $348,000 is reasonable.  Indeed, and as set forth in the Motion for Attorney Fees,

15  Class Counsel's lodestar calculation has already outstripped its requested $348,000.  And, once Class

16  Counsel's lodestar calculation outstrips the requested award, the common fund percentage will be a

17  negative multiplier to the lodestar, and "[a] negative multiplier 'suggests that the negotiated fee

18  award is a reasonable and fair valuation of the services rendered to the class by class counsel.'" *Chen*

20  *v. Chase Bank USA, N.A.*, 2020 U.S. Dist. LEXIS 110755 * 32-32 (N.D. Cal. June 23, 2020) (quoting

21  *Chun-Hoon v. McKee Foods Corp.,* 716 F. Supp. 2d 848, 854 (N.D. Cal. 2010)).

22      Finally, it should be noted that Class Members and all parties to the case must be given

23  adequate notice, and time to object, to Class Counsel's fee request—which was done in this case.

24  FRCP 23(h); *In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988, 993 (9th Cir. 2010). This is

25  because, like any of the provisions of the proposed settlement, the Class Members have the right to

---

[19] Green Decl. ¶ 25.

object to the amount of fees and costs requested by Class Counsel to secure and maintain the settlement. Therefore, an additional consideration (unknown to Class Counsel at the time the motion was filed) in assessing Class Counsel's fee request is that no Class Member, or any other party, has objected to the amount of the request or the Motion for Attorney Fees.[20]

Likewise, no Class Member (or anybody else) has come forward to contest the reasonableness or appropriateness of awarding the Class Representative a service award in the amount of $25,000. Approval of this award is warranted as a matter of policy, is appropriate under applicable precedents, and is within the range of reasonableness. *See Garcia v. Gordon Trucking, Inc.*, 2012 U.S. Dist. LEXIS 160052 *31 (E.D. Cal. Oct. 29, 2012) (approving aggregate incentive awards of $60,000 or 1.6% of the settlement value of $3.7 million to four named plaintiffs)*; see also Spicer v. Chi. Bd. of Options Exchange, Inc.*, 844 F.Supp. 1226, 1267-68 (N.D. Ill. 1993) (collecting cases approving incentive awards ranging from $5,000 to $100,000, and approving $10,000 for each plaintiff).

### c.  The parties have no other agreements besides opt-outs.

---

[20] Green Decl. ¶¶ 22-23. In CPT Group's administration website FAQ, the following statement was made regarding how Class Counsel were being paid:

> Class Counsel will ask the Court for an award of attorneys' fees and costs up to a maximum of $400,000 (30% of the Settlement Fund plus reimbursement of costs), to be paid from the Settlement Fund, but the Court may award less than this amount. Subject to approval by the Court, the Class Representative may also receive a service award totaling up to $25,000.00, to come from the Settlement Fund, for his services in helping to bring and resolve this case.

> Class counsel will file their motion for attorneys' fees and the Class Representative service award by September 8, 2023. You may object to the amount of the fees and/or the service award as set forth below in *FAQ 17*.

> The Court will determine the appropriate amounts to award. The Settlement is *not* conditioned upon Court approval of any of the attorneys' fees and costs or Class Representative service award amounts.

*See* FAQ, ¶ 16, *available at*: https://www.makerprotocolsettlement.com/FAQ.

Rule 23(e)(2)(C)(iv) requires the disclosure of any agreement made in connection with the proposed Settlement.  As disclosed in the Settlement (¶7.3), the Parties have entered into a standard supplemental agreement which provides that if Class Members opt out of the Settlement such that the number of Class Members falls below a certain amount, Defendant has the option to terminate the Settlement.  While the supplemental agreement is identified in the Settlement (*id.*), its specific terms are confidential.  *See Kamakana v. City & Cty. Of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006).  There are otherwise no other agreements.

### d.  The proposed plan treats Class Members equitably.

The Plan, discussed in more detail above and set out in the Class Notice, explains how the Settlement proceeds will be distributed among Class Members who submitted timely, valid claims. It provides a formula for calculating the recognized claim of each Class Member based on the ETH auctioned from that Class Member's Vault.  It is fair, reasonable, and adequate because it does not treat Plaintiffs or any other Class Member preferentially.  *In re Zynga Inc. Sec. Litig.*, No. 12-cv-04007-JSC, 2015 WL 6471171, at *10 (N.D. Cal. Oct. 27, 2015).

### e.  Notice satisfies due process.

Given the success in implementing the preapproved notice plan, the notice undoubtedly satisfies the notice components of rules 23(c) and (e) of the Federal Rules of Civil Procedure and due process.  The notice "describes the terms of settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard," and that the notice has sufficiently alerted Class Members of "the opportunity to opt-out and individually pursue any state law remedies that might provide a better opportunity for recovery" has been provided. *Hanlon v. Chrysler Corp.* 150 F.3d 1011, 1025 (9th Cir. 1998) *overruled on other grounds by Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011); *see Benipayo v. Volkswagon Grp. of Am. Inc.*, 975 F.3d 770 (9th Cir. 2020) (noting *Hanlon* was overruled by *Dukes* on other grounds).

1   And the parties went above and beyond the notice plan itself by providing multiple notices
2   and reminders through internet publication, direct messaging to each affected wallet (belonging
3   exclusively to Class Members), and establishing a website and telephone number through which
4   Class Members could educate themselves on whether and how to be heard in the event they disagreed
5   with or otherwise challenged the settlement.  That is more than enough to satisfy Due Process.

7   As the Ninth Circuit has noted, "neither Rule 23 nor the Due Process Clause requires *actual*
8   *notice* to each individual class member." *Briseno v. ConAgra Foods, Inc*., 844 F.3d 1121, 1128 (9th
9   Cir. 2017), *cert. denied sub nom. ConAgra Brands, Inc. v. Briseno*, ⸺ U.S. ⸺, 138 S.Ct. 313,
10  199 L.Ed.2d 206 (2017). Rather, "[t]he notice must be the best practicable, reasonably calculated,
11  under all the circumstances, to apprise interested parties of the pendency of the action and afford
12  them an opportunity to present their objections." *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811
13  (1985).  Courts in this district have approved notice plans strikingly similar to the one here as
14  reasonably designed to inform absent class members of the action. *See, e.g.*, *In re Anthem, Inc. Data*
15  *Breach Litigation*, 327 F.R.D. 299, 329 (N.D. Cal. 2018) (accepting notice plan); *Lilly v. Jamba*
16  *Juice Co.*, 308 F.R.D. 231, 239 (N.D. Cal. 2014) (accepting notice plan that provided notice by mail
17  for class members whose addresses were obtainable and notice through internet and print media for
18  class members whose addresses were not).

20  Accordingly, the notice provided here passes muster—that it "was the best practicable,
21  reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of
22  this action and afford them an opportunity to present their objections."

24  **f.   The plan of allocation is fair and appropriate**.

25  Finally, the plan of allocation is fair, adequate, and reasonable. "A plan of allocation that
26  reimburses class members based on the type and extent of their injuries is generally reasonable." *In*
27  *re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 332 (N.D. Cal. 2018) (citing cases). For this

reason, "an allocation formula need only have a reasonable, rational basis, particularly if recommended by experienced and competent counsel." *Id.* (citing cases).

Here, the plan of allocation meets this standard. It will result in 100% of the funds being distributed to Class Members who made valid claims after reasonable notice, and it will eliminate any need to consider cy pres or any reversionary interest—allocation processes which require an added measure of judicial scrutiny and analysis. Likewise, it is based on a formula directly proportional to the Class Members' individual harms—i.e., each Class Member will receive a percentage of the settlement funds proportionate to the amount of ETH they lost.

Any unclaimed funds will be immediately accounted for by a calculation method that is limited to those Class Members that timely and appropriately claimed a share of the Common Fund. To the extent any of the eleven claims fail to collect their share, that amount will be distributed to the remaining Class Members using the same formula.

## CONCLUSION

Nothing has materially changed or altered the underlying settlement agreement or its fairness since the Court preliminarily approved it in August 2023.  In fact, since that time, the claims administrator provided notice, and nothing compromised that process.  No Class Members objected or opted out.  And more than one-third of all outstanding ETH has been claimed.

Plaintiff and his Counsel respectfully request the Court grant final approval of the settlement agreement, certification of the Class, Counsel's motion for attorney fees, and Counsel's motion for incentive award.

Dated: January 5, 2024.

/s/ Adam S. Heder
**JURISLAW LLP**
Adam S. Heder
Three Centerpointe Drive, Suite 160
Lake Oswego, OR 97035
adamh@jurislawyer.com
Telephone:   (503) 968-1475
*Counsel for Plaintiff and Counsel for the Proposed Class*